IRVING ROSENBAUM, Appellant, v. EZEKIEL SARASOHN and LEON KAMAIKY, Copartners Doing Business under the Name and Style of SARASOHN & SON, Publishers of the Jewish Daily News and Jewish Gazette, Respondents.

First Department, July 11, 1918.

**Principal and agent — action by advertising broker for commissions — erroneous dismissal of complaint on ground that plaintiff was acting in dual capacity and failed to disclose his agency — when broker not required to disclose agency for other party to contract.**

In an action by an advertising broker to recover commissions for procuring for the defendants, the publishers of a newspaper, an advertising contract from a company owning real estate which it desired to sell, it was error

to dismiss the complaint at the close of the plaintiff's case on the ground that he had failed to disclose to the defendants that he was an agent of the company owning the real estate and had received commissions from them in connection with the same transaction, where it appears that the services rendered by the plaintiff to the defendants and to the company owning the real estate were not identical; that the defendants acted solely upon their own judgment; that they brought into the matter a real estate man in whom they had confidence; that they sent him to inspect the property; that they acted upon his report, and that they dictated the price for the advertising.

Moreover, there was evidence entitling the plaintiff to the inference that the defendants knew that he was the agent of the company owning the real estate and was preparing the advertising matter for that company prior to either payment to him on account of brokerage from which ratification of plaintiff's acting in a dual capacity might be found.

The plaintiff was not required as a matter of law to disclose his agency for the company owning the real estate.

Such a disclosure is required in a case where trust and confidence are reposed in the broker by the party sought to be charged and where such party relies upon the judgment of the broker, but not in a case where the matter involves merely the negotiation of a contract and the party sought to be charged relies solely on his own judgment and reposes no special trust or confidence in the broker.

APPEAL by the plaintiff, Irving Rosenbaum, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 4th day of March, 1918, upon the dismissal of the complaint by direction of the court at the close of plaintiff's case, and also, as stated in the notice of appeal, from the decision of the court dismissing the complaint.

*William H. Freedman,* for the appellant.

*Bernhard Bloch,* for the respondents.

SHEARN, J.:

The complaint was dismissed at the close of plaintiff's case on the ground that plaintiff, who claimed commissions by reason of the fact that as an advertising broker he had procured for the defendants an advertising contract from the Home Guardian Company, had failed to disclose to the defendants that he was an agent of the Home Guardian Company and had received commissions from them in connec-

tion with the same transaction. Plaintiff testified that he called at the offices of the defendants' newspaper and informed the advertising manager that he had a client who was the owner of various real estate properties, including property near Asbury Park, and that he had talked over with his client a proposition which his client had authorized him to make in a general way to the defendants, which proposition contemplated the disposal of the Asbury Park property through the agency of one of defendants' publications and in a manner that would increase the circulation. The advertising manager arranged for a meeting between plaintiff and the defendant Kamaiky, and at this meeting the latter stated that he wished to have his circulation manager, Mason, present at the interview because Mason had formerly been in the real estate business and his knowledge of the business, together with his position in defendants' office, made it desirable for him to be present. Thereupon plaintiff outlined his proposition, which in brief was that the Home Guardian Company was to deed to the defendants as trustees the Asbury Park property, which had been cut up into lots, at the rate of 1,000 lots at a time, so that the defendants' newspaper the *Jewish Daily News* would appear to be the owner. These lots were to be advertised by the defendants in said newspaper for sale; the cost to the advertiser was to be at regular publication rates; the lots were to be sold for thirty-two dollars and seventy-five cents each, payable in installments, and for every lot so sold two dollars and sixty-five cents worth of advertising was to be inserted and paid for out of the collections as and when made from the purchaser; the Home Guardian Company was to agree that in any event it would use and pay for $2,000 worth of advertising during the first two months of the proposed contract; and, in addition, each purchaser of a lot was to be required to subscribe to the newspaper for six months for each lot purchased, the subscription price, two dollars, being payable in advance and going solely to the defendants. After the proposition was outlined, defendant Kamaiky instructed the plaintiff to discuss the matter in full detail with Mason and arrange with the latter to have him meet with the Home Guardian Company and go down and see the property " because in offering this to our subscribers,

we want to know that the property is all right." Kamaiky said, " then if you get together on that, then come back to me and we will work out the balance of the arrangement." Subsequent to these transactions, Mason, defendants' advertising manager, Wollberg, and another employee of the defendants accompanied a representative of the Home Guardian Company and the plaintiff to the property near Asbury Park, which was inspected. Defendants' representatives were favorably impressed with the proposition. Thereupon defendants' representative, Mason, prepared a draft contract which was submitted to the Home Guardian Company and after further negotiations a final contract was prepared by Mason which was entered into between the parties. The contract provided that defendants would pay the plaintiff a commission of twenty per cent and two per cent cash discount. The parties proceeded under the contract and the scheme was successful. Plaintiff, on behalf of the Home Guardian Company, furnished to the defendants the necessary copy material which was to be printed by the defendants with directions as to the space to be used. In pursuance of the contract the Home Guardian Company in the month of September, 1916, made a payment of $1,000 to the defendants, and after such payment had been made, plaintiff rendered a bill to the defendants for his compensation at the agreed rate. After the receipt of the bill Kamaiky sent for the plaintiff and objected to the payment of the agreed rate, urging that as five per cent of the commission was to be paid by plaintiff to an employee of the defendants pursuant to a private arrangement between such employee and the plaintiff, the defendants should have the benefit of this, and thereupon plaintiff consented to reduce his charge to fifteen per cent and rendered a corrected bill for this amount, which was paid. Subsequently, in January, 1917, plaintiff received another payment of $150 after the second installment of $1,000 had been paid to the defendants by the Home Guardian Company. As a result of this scheme, the Home Guardian Company sold 4,763 lots during the first year of the contract, and the defendants received $12,621.95 under the contract. After the second payment of commissions, defendants, having learned through a letter written by the Home Guardian

Company on September 7, 1916, in which plaintiff was referred to as " our advertising agent " and through an investigation which that information prompted, that plaintiff had a contract with the Home Guardian Company whereby he was receiving one dollar for each lot sold, refused to pay any further commissions.

The learned trial justice was of the opinion that the services rendered by the plaintiff to the defendants and to the Home Guardian Company were identical and that plaintiff's failure to disclose his contract with the Home Guardian Company disentitled him to recover a commission from the defendants. The services were not identical, for in addition to plaintiff's negotiating the contract for the parties as an advertising broker, the plaintiff performed other services for the Home Guardian Company; as above stated, he prepared their advertising matter and took care for them of the matter of giving instructions for the insertion of the advertising, the space that was to be used and rendered kindred services. Neither was the plaintiff broker required as a matter of law to disclose his agency for the Home Guardian Company. (*Knauss* v. *Krueger Brewing Co.*, 142 N. Y. 70.) Such a disclosure is required in a case where trust and confidence are reposed in the broker by the party sought to be charged and where such party relies upon the judgment of the broker, but not in a case where the matter involves merely the negotiation of a contract and the party sought to be charged relies solely on his own judgment and reposes no special trust or confidence in the broker. As the case appeared at the conclusion of plaintiff's testimony, it clearly appeared that the defendants acted solely upon their own judgment; that they brought into the matter a real estate man in whose judgment they had confidence; that they sent such representative to inspect the property; that they acted upon his report, and that they dictated the price to be charged for the advertising. Furthermore, there was evidence entitling the plaintiff, on this dismissal, to the inference that the defendants knew that he was the agent of the Home Guardian Company and was preparing the advertising matter for that company prior to either payment on account of brokerage, from which ratification of plaintiff's acting in a dual capacity might be found.

An entirely different situation may be disclosed when all the evidence in the case is in, but upon plaintiff's uncontradicted testimony, giving the plaintiff the benefit of the inferences to which he is entitled under the circumstances, the nonsuit was erroneous.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.