MIDCOURT BUILDERS CORP. et al., Appellants, *v.* L. T. EAGAN et al., Respondents.

Fourth Department, February 18, 1971.

*Griffith & Pileckas* (*Paul L. Pileckas* of counsel), for appellants.

*Hancock, Estabrook, Ryan, Shove & Hust* (*Stewart F. Hancock, Jr.,* of counsel), for respondents.

WITMER, J.  This action arises out of the sale in 1961 of property known as the Syracuse Industrial Park.  The property consists of approximately 100 acres of land improved with 18 industrial and commercial buildings which are leased to various tenants.  Appellants acquired the property in the early 1950's, and for years respondents served them as brokers in leasing various parcels thereof.  During the period from early 1959 through 1961 appellants gave various authorizations to respondents to sell the property for a stated price for which, if accomplished, respondents would be paid $650,000 in commissions. The last such authorization was entered into on February 16, 1961.  It provided that " any prior understanding or agreement is hereby nullified, cancelled and of no effect whatsoever " and

that this " exclusive " authorization shall be subject to 30 days' notice of cancellation by appellants.

On May 1, 1961 appellants gave respondents written notice of cancellation of the above sales authorization, effective June 1, 1961. Respondents having expended considerable money and effort in endeavoring to sell the property, pleaded with appellants for an extension of the sales authorization but appellants were adamant and insisted on terminating the agreement. It was later revealed upon the trial that by the above cancellation notice appellants, some of whom were well trained in the art of selling real estate, were putting pressure on respondents to consummate a sale.

Although appellants refused to extend the old sales authorization or to sign a new one, they executed a proposed contract to sell the property for the net sum of $11,700,000 with the name of the purchaser left blank, and they delivered it to respondents with a letter giving respondents four days in which to complete the contract by filling in the name of a buyer. The letter further provided that no commission on the transaction would be paid by the sellers and that any commission respondents received must be paid by the purchasers. This was indeed intensive pressure upon respondents, considering the amount of the commission involved. On the fourth day of said " contract " and letter, respondents had Frel Properties, Inc., a corporation wholly owned by them, sign the contract for the purchase of said property. Respondents did not disclose to appellants that they were in essence the purchasers.

It is obvious that respondents did this to protect their investment of time and money previously made in an effort to sell this property, and that even then they did not intend to be the actual buyers of the property through said corporation, but used it as a temporizing maneuver to enable them to continue their efforts to find an outside purchaser. There is evidence from which the court could conclude that appellants understood this to be the case. During the period after Frel Properties, Inc. thus contracted with appellants to buy the property and before the closing of the transaction, respondents continued their efforts to find a genuine purchaser. They parried for time and sought extensions of time to close. As a condition for granting such extensions of time for closing, appellants twice demanded and received a deposit of $50,000 as evidence of good faith and to secure eventual performance, which sums, totaling $100,000, were advanced to appellants by respondents. In this period respondents told appellants that in order to complete the transaction they might have to take some interest in the

property. One of the appellants' principals testified that appellants did not care who put up the money, so long as they had some money on deposit against the delay in closing.

As events turned out, respondents' prospective purchasers " bowed out ", and in November, 1961 respondents arranged, without express disclosure to appellants of their equitable interest in the transaction, to complete the transfer to Frel Properties, Inc. It is noteworthy that appellants required no individual guarantee of the promissory notes given by Frel Properties, Inc. for part of the purchase price, nor did appellants make any investigation into the financial condition of that corporation or its officers or stockholders. We observe, as part of the total picture, that after the transaction was closed, down to the day of trial in September, 1969 nearly eight years later, appellants accepted from time to time substantial payments on the purchase-money mortgage, being well aware of many subsequent transactions respecting the parcels in the tract and much construction thereon.

Appellants allegedly first became aware of respondents' interest in Frel Properties, Inc. late in 1964 or early in 1965 and soon thereafter commenced the instant action to set aside the sale to the corporation on the ground that respondents, as their agents and brokers, had breached their fiduciary duty of full and complete disclosure by concealing the fact that they were purchasing the park for themselves. At the close of all the evidence upon the trial, the Judge ruled on the motion for non-suit made at the end of the plaintiffs-appellants' case. He held that the contract which appellants on June 3, 1961 tendered to respondents was an option to buy the property at the stated price and that as a matter of law respondents had the right to secure a purchaser thereof and retain any amount offered above the option price. He further held that at the time of this sale no fiduciary relationship existed between appellants and respondents, and so, of course, none was violated. He thereupon granted the motion to dismiss the complaint.

We are called upon, therefore, to decide the question of whether under such circumstances respondent brokers had the right to purchase the property for themselves without disclosing that fact to the seller. Appellants, sellers, contend that respondents were still in a fiduciary relationship with them and that under the doctrine of *Wendt* v. *Fischer* (243 N. Y. 439) respondents could not purchase the property without making full disclosure thereof to appellants, and hence that the sale must be nullified. Respondents contend that their agency relationship with appellants had been terminated, that the letter and pro-

posed contract constituted an option for net sale and purchase, and that under such an arrangement it was of no concern to appellants as to who purchased the property so long as the arrangements for securing payment of the purchase price were satisfactory to appellants.

We agree with the trial court that the principal and agent relationship between appellants and respondents was terminated by appellants as of June 1, 1961, and that the " contract " executed by appellants and delivered to respondents in blank with letter limiting its duration and expressly denying respondents any compensation from appellants for finding a purchaser, constituted an option by appellants to whom it might concern to buy the property at the stated price (*Benedict* v. *Pincus,* 191 N. Y. 377, 382; 9 Williston, Contracts [3d ed.], § 1014C, pp. 74–76), without limitation as to who could become the purchaser. The fiduciary relationship of seller and broker had ceased, and respondents were possessed of no special information because of the prior relationship. Respondents were, therefore, at liberty to find a buyer and retain any amount offered in excess of the stated sales price or to purchase the property themselves, without disclosing that they were the purchasers (*Lundy* v. *Murtagh,* 141 N. Y. S. 2d 247, app. dsmd. 285 App. Div. 1217; *Allen* v. *Dailey,* 92 Cal. App. 308, 313; *Pascal* v. *Cotton,* 205 Cal. App. 2d 597; *Synnott* v. *Shaughnessy,* 2 Idaho 122, affd. 130 U. S. 572; 12 C. J. S., Brokers, § 42, p. 105; and see *Washer* v. *Seager,* 272 App. Div. 297, 303 *et seq.,* affd. 297 N. Y. 918; *Bayer* v. *Bayer,* 215 App. Div. 454, 457, 469 *et seq.,* 477). Moreover, appellants received exactly what they asked for and without obligation to respondents (see *Synnott* v. *Shaughnessy,* 130 U. S. 572, 580, *supra*). The cases relied upon by appellants to the contrary are distinguishable upon their facts.

The evidence established that after June 1, 1961, appellants were not dealing with respondents in their former fiduciary capacity as brokers but as strangers and prospective buyers. They placed no reliance upon respondents for advice in establishing the price or terms of sale, and they did not confide in respondents. In order to put pressure upon respondents to act to move the property, appellants falsely represented that they had another prospective buyer to whom they might sell unless respondents acted promptly. This surely was a repudiation of any confidential, fiduciary relationship with respondents (*Rosenbaum* v. *Sarasohn,* 184 App. Div. 204, 208; and see *Bayer* v. *Bayer,* 215 App. Div. 454, 461, *supra*).

Appellants having completely failed to establish that respondents were under a fiduciary relationship with them in connection with this sale, the motion to dismiss the complaint was properly granted, and the judgment should be affirmed.

GOLDMAN, P. J., DEL VECCHIO, GABRIELLI and HENRY, JJ., concur.

Judgment unanimously affirmed, with costs.