[No. 7897.]

## PACE ET AL. V. CLINE ET AL.

1. EVIDENCE—*Admissions by Silence.* One testifying in his own behalf fails to deny a statement imputed to him in the testimony of his adversary. He must be held to admit that he in fact made the statement. (143.)

2. PRINCIPAL AND AGENT—*Termination of Agency—Evidence.* A broker having accepted employment to purchase real property for a client, reports the price demanded by the owner. The client declines to purchase at that price, and directs him to write again, and ascertain if a less price will not be accepted. The relation of principal and agent still continues. (141-143.)

3. —— *Duties and Disabilities of Agent.* One employed to purchase real property for another is not at liberty to purchase for himself without the prior full knowledge and consent of his principal. If he does so, he holds as trustee for the principal. (143.)

4.   APPEAL AND ERROR—*Judgment Against the Clear Weight of the Testimony* will be reversed. (144.)

*Error to the Court of Appeals.*

Mr. MERLE D. VINCENT and Messrs. GOUDY, TWITCHELL & BURKHARDT, for plaintiffs in error.

Mr. MILTON R. WELCH and Mr. D. C. BEAMAN, for defendants in error.

CHIEF JUSTICE GABBERT delivered the opinion of the court.

Defendants in error brought an action to enforce specific performance of a contract, claimed to have been executed by Pace, by his agent, whereby he agreed to convey to them a lot in Paonia, and to cancel a deed executed by Pace to Mrs. Curtis for the lot in question. For answer Pace admitted that he conveyed the property to Mrs. Curtis. By way of cross-complaint Mrs. Curtis alleged that she employed plaintiffs in their capacity as real estate brokers, to negotiate with Pace for the purchase of the lot; that they secured from him an option to purchase in their own name; that thereafter they wrongfully repudiated the agency, and claimed the contract was for their own benefit. The plaintiffs replied to the cross-complaint, putting in issue its affirmative averments. Other issues were made by the pleadings, which it is not necessary to consider, for the reason it appears that the vital question is whether from the testimony it was established that plaintiffs, in securing the contract from Pace, were acting as the agents of Mrs. Curtis. The trial court found in favor of plaintiffs, and rendered judgment requiring Pace to comply with his contract, and annulling the deed from Pace to Mrs. Curtis. From that judgment the defendants appealed to this court. The cause was transferred to the Court of Appeals, where the judgment was affirmed, *Pace v. Cline,* 22 Colo. App. 254, and defendants bring the case here for review on error.

Plaintiffs were real estate agents. It stands undisputed that they were employed by Mrs. Curtis to negotiate with Pace for the purchase of the lot, and that they accepted the employment. They subsequently obtained from Pace in their own name an option to purchase the lot. This option was executed by a Mr. Campbell as the agent of Pace. It is claimed that Campbell was without authority to execute the contract. It is also claimed that Pace ratified this contract, but we do not deem it necessary to express an opinion on either of these questions. Pace was in the State of Washington at the time the contract was executed, and when he returned he conveyed the lot to Mrs. Curtis. Mrs. Curtis was represented in the transaction with plaintiffs by her husband, and he and Hufty discussed the matter frequently during a period of two or three weeks. The latter testified that he called on Campbell for the purpose of ascertaining the price for which the lot could be purchased; that Campbell told him fifteen hundred dollars; that he, Hufty, told Mr. Curtis this sum was the price; that Curtis replied it was a ridiculous price, and that Pace ought to take a thousand dollars; that this sum was about all he would give, but he might pay twelve hundred dollars; that he, Hufty, told him Pace would not take that sum, and he said he would not give fifteen hundred dollars, "and it ended there." On cross-examination he was asked this question: "Didn't he tell you at that time to write again and see if you could do better?" Answer: "I don't know whether he did or not." It appears from the testimony of Hufty that at the time of the negotiations Cline and Hufty were occupying a room in the building on the lot, and that Curtis told him that if he purchased the lot they would be permitted to retain their office, without any increase of rent, as long as they wanted it. Campbell, who acted for Pace in executing the contract, was asked the following question: "State whether or not he (Hufty) told you for whom he was obtaining the contract, if anyone beside him-

self." Answer: "He told me that he was supposed to be buying it for Ed Curtis, but that he was buying it for himself."

From the testimony it appears that Pace owned two adjoining lots, which he was desirous of selling in connection with the lot involved. Curtis testified that after he employed Hufty and Cline to make the purchase, Hufty told him he had a reply from Pace in which he stated that if he sold the corner lot (the lot in question), the price would be fifteen hundred dollars; that he told Hufty to write Pace and tell him he would give twelve hundred dollars, provided he would vacate the alley in the rear; that Hufty said he would; that Hufty afterwards told him Pace stated in reply that if he sold the lot the price would be fifteen hundred dollars; that he asked Hufty what was said about the alley, and was told that Pace said nothing; that he afterwards told Hufty if he could buy the corner lot for fifteen hundred dollars, to buy it, and if he could not buy that lot without buying the whole three for six thousand dollars, to buy them all. He further testified it was understood with Cline and Hufty that if the purchase was made, they were to have a written contract giving them the right to occupy the office they were then occupying as long as the building then on the premises remained there, at the same rental they were then paying, and if his wife saw fit to improve the property, she would give them the refusal of an office on the ground floor; that Hufty asked him what the rent would be, and he told him it would depend on the cost of the building, and he presumed it would be from twelve to fifteen dollars per month, to which Hufty replied that this was agreeable. It appears from the testimony that Hufty never wrote Pace or received any reply from him regarding the lot relative to its purchase by Curtis.

Curtis also testified that after instructing plaintiffs to purchase for fifteen hundred dollars, he called on Cline and Hufty and inquired how the matter was progressing, and

was told by Hufty that they had a cinch on the lot so that nobody else could get it, to which he replied, "That is good." That at different times he was in their office every few days for two or three weeks; that he told them he would take the property for fifteen hundred dollars, and finally Hufty said they were figuring with other parties, and that if they did not take it he could have it; that later he asked Cline, "How does this matter stand—are we going to do business or not?" To which Cline replied, "We are going to stick him (Pace) to it." "Well," I says, "then it looks to me as though you had given me the dirty end of a very dirty deal;" and Cline then said, "Self-preservation is the first law of nature."

In a letter to Pace by Cline and Hufty, written a few days after they had obtained the contract from Campbell, they stated in substance that they were in no particular hurry about closing the deal, but they wanted to know that they were not to be driven off the corner, as some of their enemies had threatened; that they were making the deal as a matter of self-protection, and preferred that it be not made public, and as it concerned no one but Pace and themselves, "trust no one will be made the wiser."

From this synopsis of the testimony the important question is whether the relation of principal and agent between Mrs. Curtis and plaintiffs was dissolved. If there was a substantial conflict in the testimony on this issue of fact, then the finding of the trial court should not be disturbed on review, but an analysis of the testimony discloses there is not. The only testimony which tends in the slightest degree to establish that plaintiffs in procuring the option were not acting as agents for Mrs. Curtis is the statement of Hufty to the effect that Curtis said he would not give more than twelve hundred dollars for the lot, "and it ended there." That this ended the relation between the parties is a mere conclusion, however, of plaintiff Hufty, and contrary to other undisputed testimony. Hufty says that at

this time he does not remember whether Curtis told him to write again and ascertain if he could get a price below fifteen hundred dollars. Certainly Hufty would remember whether Curtis made such a request. If he did, then it is clear the agency was not terminated. Hufty does not deny the conversation detailed by Curtis about vacating the alley, or the request that he purchase the three lots for six thousand dollars, if he could not purchase the corner for fifteen hundred dollars. He does not deny he told Curtis that he had arrangements made so that nobody else could get the lot. By failing to deny this testimony, it clearly appears from what may be termed his own admissions that Curtis never told him as a finality he would not give more than twelve hundred dollars for the lot. Had he been acting in good faith there was no occasion for misleading Curtis by giving him to understand that he had secured an option for the benefit of Mrs. Curtis, and he would have told him promptly that he was not acting for Mrs. Curtis, because his firm was no longer her agents. Neither would there have been any reason for enjoining secrecy on Pace. In brief, we think the evidence, without substantial conflict, conclusively establishes that the relation of principal and agent was never terminated, and that from the inception of the transaction plaintiffs set about, after accepting employment at the hands of Mrs. Curtis, to secure the property for themselves.

The only remaining question is to declare the law applicable to this state of facts. An agent without the full knowledge and consent of his principal cannot purchase for himself property which he is employed to purchase for his principal. If he does so it is a breach of faith, and he will be regarded as holding such property in trust for his principal. 31 Cyc. 1441; *Johnson v. Hayward*, 74 Neb. 157, 103 N. W. 1058, 107 N. W. 384, 5 L. R. A. (N. S.), 112, 12 Ann. Cas. 800. We therefore conclude that the contract taken by Cline and Hufty was for the benefit of Mrs. Cur-

tis, and that they had no right to enforce it against Pace or annul the deed which he gave her.

The judgment of the Court of Appeals is reversed and the cause remanded, with directions to enter a judgment reversing the judgment of the District Court, and remand the cause to that tribunal, with directions to enter a judgment that plaintiffs take nothing by their action, and to dismiss the cause at their costs.

*Judgment reversed and cause remanded with directions.*

Decision *en banc.*