No. 15,575.

WILLIAMS, ADMINISTRATRIX OF THE ESTATE OF PARRIOTT, DECEASED *v.* WAGERS ET AL.
(184 P. [2d] 497)

Decided September 2, 1947.

Mr. Samuel Chutkow, Mr. Noah A. Atler, for plaintiff in error.

Mr. George A. Epperson, for defendants in error.

Mr. Justice Jackson delivered the opinion of the court.

Parriott, as the vendee under a purchase and sale contract covering thirteen quarter sections of land, instituted this action for specific performance of the contract. He was unsuccessful in a trial to the court, which ordered cancellation of the contract because of fraud. He died after the cause was brought here for review, and Dorothy A. Williams, administratrix of his estate, was substituted as plaintiff in error. Fifteen specifications of error are presented for our consideration which we believe stand or fall on the matter covered in our opinion.

From the record it appears that Parriott was a licensed real-estate broker under Colorado laws. There is testimony that on February 15, 1943, he talked to defendant Wagers about selling some of the latter's land. On February 27 he called at the Wagers' home and talked to both Mr. and Mrs. Wagers about their property in Wash-

ington County, Colorado. He asked them if they would take $10,400 for their land, stating he had a man in Kansas who might buy it. In reply to the question as to what his commission would be, Mr. and Mrs. Wagers testified that he said $500; however, the Wagers stated they did not want to sell, and it seems to be agreed that at this meeting there was no listing nor agreed price. On March 6 there was another meeting between Parriott and Wagers, at which $10,400 was mentioned as the price for thirteen quarter sections, eight of which they owned by good titles and the remaining five being held under tax title. Of the total 2080 acres, approximately 560 acres were planted in wheat. Wagers testified he told Parriott he was doing some repairing on the house which would cost another $100, and that if the sale went through this amount would have to be deducted from his $500 commission; and he testified further that Parriott agreed to this condition. Parriott was to have until March 20 to make the sale. Wagers says he wrote in Parriott's book, "10,400 by March 20th" and signed it "N. C. Wagers." Parriott says Wagers made the memorandum on one of his cards and that it was not signed. Neither the book nor the card was produced by Parriott at the trial.

On March 20 Parriott called the Wagers by phone and said that he had sold their land to a Kansas man. Parriott and Wagers later met. Wagers testified that Parriott, in answer to a question, reported he had sold for the full amount of $10,500. He wanted Wagers to take $500, which he said he had received from the purchaser as a down payment, and sign a contract. This Wagers did not do, but they arranged to meet at an attorney's office the next week. On March 24 there was prepared in a lawyer's office the purchase and sale agreement which is the subject matter of this action. Present at this meeting, in addition to the Wagers, Parriott and the lawyer, was a man named Cave who claimed to be representing the Kansas purchasers, and he suggested one of the

paragraphs in the contract. When the contract was completed except for the name of the vendee, the attorney asked the name of the purchaser. There is corroborated testimony to the effect that at that point Parriott spoke up and said, "Just put my name in the contract and I will go ahead and settle up the deal and get Jack [Wagers] his money." Accordingly, Parriott's name was inserted in the contract as vendee.

Subsequent examination of the abstracts of title by an attorney disclosed some defects, but both sides seemed to agree that none were such as could not be cured or that would prevent the deal from being consummated. When the time came to prepare deeds—warranty deed for the eight quarter sections, and quitclaim deed for the five quarter sections held by tax title—Parriott insisted that the grantee's name in both deeds be left blank to be filled in by him later. Wagers kept pressing him as to the identity of the purchaser and the price to be paid. Parriott kept evading these questions. Wagers testified that on May 5 he became so suspicious that, when Parriott tendered the purchase price, he refused to consummate the transaction. Parriott then brought this action on June 1st.

In the course of the trial it soon appeared that Parriott had, on March 20, entered into a contract with two Kansas men in words and figures as follows:

"This agreement made and entered into this 20th day of March by and between Art Parriott Agent, party of the first part and Leo J. Dreiling and Frank Herl, parties of the second part.

"Witness, the party of the first part hereby agrees to sell and the second parties agree to buy the following described real estate.

"SE-33-1S-56, E½-4-N½ & SW-9, S½-8, 2S–56, Washington County Colorado, at a price and on the following terms, Consideration of $10,000 to be paid as follows, $1000 cash and balance $9000 upon approval of abstract of title, showing marketable title, said title is to be ap-

proved within thirty days, or as soon as possible thereafter.

"It is agreed that the parties of the second part shall have possession of said premises on approval of abstract and final payment, and second parties shall receive one-third rent share of all crops now growing on said land.

Art Parriott, Agent<br>Frank Herl

"Dorothy Guida, Witness.        Leo J. Dreiling"

Dorothy Guida, whose name appears as witness to the signatures on the contract, testified that she was the daughter of Art Parriott; that she typed the contract at her father's direction; that her father did not actually sign the contract, although he was in the office and knew its contents, but that she signed his name, "Art Parriott, Agent," as she had been accustomed to doing in other contracts. Parriott did not disclaim the contract. The purport of Guida's testimony was merely to explain how the word "agent" appeared after her father's name.

The land described in the foregoing contract of March 20 consisted of the eight quarter sections of land, with good title, that was to be conveyed by warranty deed, under the contract of March 24. It thus appeared, and was admitted by Parriott on cross-examination, that he was selling those quarter sections for the sum of $10,000, on which he already had received $1,000 cash deposit; that he himself would thus retain for his services in the deal the five quarter sections held by tax title plus two-thirds of the growing crops. Under the evidence it appears that, notwithstanding a hail storm which destroyed some of the crop, the combined value of the two-thirds interest in the crop and of the five quarter sections of tax-title land was not far from $10,000. This value was not apparent at the date of the contracts, having been determined by the successful wheat crop. Parriott testified that, his arrangement throughout the negotiations was for a net price listing of $10,000 which subsequently

was embodied in the written contract of March 24 between Wagers and Parriott.

Counsel maintain that it was not Wagers' business as to what Parriott made out of the transaction, so long as Wagers was paid his $10,000, and that it was immaterial whether Wagers might have made a good or a bad business deal, citing: 4 R.C.L.—Brokers—page 277; 12 C.J.S. 103; 3 C.J.S., pp. 21, 22; 8 Am. Jur.—Brokers—p. 1040, §92; and *Synnott v. Shaughnessy*, 130 U.S. 572, 580, 9 Sup. Ct. 609, 32 L. Ed. 1038. The foregoing authorities, in addition to cases cited and quotations therefrom by counsel for plaintiff in error, are based on the theory that in each transaction there is, in fact, nothing more than an agreement for a net price listing, and that both parties have dealt with each other at arms length from the very beginning of negotiations on that basis.

But in the instant case, under date of November 4, 1943, the trial court made the following findings: (a) "The plaintiff in this case was the agent of the defendants at all times throughout the entire transaction involved in this lawsuit." (b) "I further find that even though he [the plaintiff] should be classed as an agent with a net price, he nevertheless was an agent throughout charged with certain obligations which he violated in not furnishing and putting his principals in possession of all the facts and circumstances concerning the entire transaction." (c) "He was not an independent buyer, but at all times held a fiduciary relationship." (d) The equities are in favor of the defendants. (e) Defendants are entitled to cancellation of the contract. (f) Equity requires the defendants also to do equity and they should return the $500, part payment received by them under the alleged contract. (g) "I further find that time was not the essence of the contract." (h) "Plaintiff is not entitled to damages [on account of wheat damaged by hail] as prayed for since he is not to recover specific performance upon which alleged damages are dependent."

On January 6, 1944, the trial court entered the following supplement to his findings of fact and conclusions of law: "1. The court finds the plaintiff was the agent of the defendants in respect to the alleged sale of their lands, and continued such agency relation throughout the entire proceedings subsequent to March 6, 1943, but without any definite agreement as to amount of commission, i.e. — if plaintiff was otherwise entitled to recover a commission, he could recover only a reasonable one. (2) * * * The court finds plaintiff was not an agent with a net price listing. The evidence wholly fails to show a meeting of minds on such a relationship at any place of the negotiations of the alleged sale. (3) * * * The court finds the plaintiff was not an independent buyer on his own account with right to resell at a profit over what the defendants were entitled to. As a matter of law, he could not be both agent for his principal and buyer himself without the knowledge and consent of his principal, the latter fully informed of all facts concerning the sale. * * * The above supplemental statements are are not intended to change and they do not change any finding heretofore made * * *."

■ The trial of the case extended through three days and the record is voluminous. As may already have been surmised, the evidence is in hopeless conflict and the question before us is not how we would resolve the matter if we were sitting in the trial of the case, but whether there is sufficient competent evidence in the record to support the judgment and findings of the trial court. We are of the opinion that there is, both in the testimony of defendant and his wife and in that of the lawyer who acted as scrivener in drawing the contract which is the basis for this suit.

■ It has been suggested that, assuming there may be evidence of an initial listing of defendants' property upon a straight commission basis, nevertheless when Parriott and defendants entered into the purchase and sale agreement of March 24, 1943, all prior negotiations

were merged in the written contract; that the parties then abandoned any former arrangement, if there was one, and adopted as a basis of remuneration for the agent a net price listing. The written contract of March 24 indicates no agency whatsoever. The only relationship shown on its face is that of vendor and vendee. And it may be noted in passing, that counsel for plaintiff must rely upon extrinsic evidence to prove the existence of an agreement to sell for a net price, just as does counsel for defendants to prove existence of an agency on a straight commission basis. The trial judge evidently was of the opinion that the evidence of defendants was the more convincing. The authority to sell or lease land need not be in writing. *Briggs v. Chamberlain,* 47 Colo. 382, 107 Pac. 1082, 135 Am. St. Rep. 223.

Had Parriott, after acting as agent, become the purchaser for his own account, he was under a duty at that point to disclose to the seller all of the information which he had previously acquired concerning the property while acting as agent for his principal. *Jewell Realty Co. v. Dierks,* 322 Mo. 1064, 18 S.W. (2d) 1043, 1046. We have applied the same rule where the agent was representing a purchaser instead of a seller. *Pace v. Cline,* 59 Colo. 138, 147 Pac. 672. We believe this rule should, and does, apply when the type of agency is changed from that on a straight commission basis to one with a net price listing, for in the latter type the principal has put a ceiling on the price he is to obtain just as effectually as when he sells outright to his agent as vendee. In *Merritt v. Hummer,* 21 Colo. App. 568, 122 Pac. 816, our Court of Appeals allowed recovery of $2700 against an agent who sold his principal's property for $18,000, having previously purchased it from the principal for $15,300. The agent relied, as in the instant case, on the theory that he had a net listing of $15,000. See, also, *Treat v. Schmidt,* 69 Colo. 190, 193 Pac. 666, where we said Schmidt undertook to sell plaintiff's land at an agreed price and that established his agency.

The landowner who gives a net price listing puts it in the agent's power to make less or vastly more than the customary commission on the selling price, just as in the case of a resale by an agent who has become the purchaser. The main difference between the agent who becomes the purchaser and the agent who takes a listing on a net price basis is that, the former must supply the purchase price; the latter has no such burden. This distinction, however, affords no basis for not applying the same rule of demanding complete and frank disclosure of all the facts by the agent to the principal at the time he ceases to act as agent on the usual basis.

When parties are dealing as vendor and vendee they deal at arms length. When a vendor gives a contract for a net price listing, and there has been no previous fiduciary relationship with the other contracting party, there is a somewhat similar dealing at arms length. But when the usual fiduciary relationship of principal and agent already exists, it is evident that the agent can not properly deal with his principal as an independent buyer, or as one having a net price contract, unless and until he has made a complete disclosure of all facts concerning his principal's property which he has had or has acquired during the fiduciary relationship, so that both parties may be put in position where they can deal with each other on equal terms, and with all facts possessed by the agent disclosed to his principal.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE STONE concur.