536 P.2d 1146 (1975)
Patricia J. LESTOQUE, Plaintiff-Appellee,
v.
M. R. MANSFIELD REALTY, INC., and Cranwell D. Parkin, also known as, Don Parkin, Defendants-Appellants.
No. 74-360.
Colorado Court of Appeals, Div. I.
April 15, 1975.
As Modified on Denial of Rehearing May 13, 1975.
*1148 No appearance for plaintiff-appellee.
Caskins & Hertzman, William J. Caskins, Jr., Richard M. Chanzit, Denver, for defendants-appellants.
Selected for Official Publication.
VanCISE, Judge.
Defendants appeal a judgment entered against them for damages for breach of fiduciary duty owed to the plaintiff. The judgment is modified and, as modified, is affirmed.
The facts as found by the trial court, fully supported by the evidence, are as set forth below. Plaintiff Lestoque owned an apartment house (the Kingston Apartments) valued at $55,000 less a first lien of approximately $25,000. Mrs. Bennett (not a party to this action) owned an apartment house (Jamaica Apartments), which had been listed for sale for several months with the defendant M. R. Mansfield Realty, Inc. (Mansfield Realty). In October of 1972, Mrs. Bennett entered into a receipt and option contract for the sale of the Jamaica Apartments for $130,000 ostensibly to Mrs. and Mrs. Nesavich (Nesavich) through a salesman for Mansfield Realty. The court found that Nesavich was a "straw man" for Mansfield Realty and its salesmen in the transactions pertaining to the Jamaica Apartments.
In December of 1972, defendant Parkin, a salesman for Mansfield Realty, contacted Lestoque. As a result, Lestoque entered into a contract with Nesavich to exchange her Kingston Apartments at a gross value of $55,000 subject to a loan of approximately $25,000 for the Jamaica Apartments (then still owned by Mrs. Bennett) at a gross value of $145,000 subject to two loans totaling $110,000, with Lestoque to make up the $5,000 difference in equities by cash payment at the closing. Mansfield Realty, through Parkin, signed as agent for both parties to the transaction. The exchange contract contained a provision in which it was agreed that Mansfield Realty was acting as broker for both parties and was entitled to commissions from each; however, it was not disclosed that Mansfield Realty, and not Nesavich, was the actual seller of the Jamaica Apartments.
On December 18, 1972, the following closings occurred: (1) Mrs. Bennett's sale of the Jamaica Apartments to Nesavich; (2) the $110,000 in loans on that property; (3) the conveyance of the Jamaica Apartments to Lestoque, subject to the loans assumed by her, with her payment of the agreed cash difference; and (4) the conveyance of the Kingston Apartments by Lestoque, subject to its loan, to M. R. Corporation, a wholly owned subsidiary of Mansfield Realty, instead of to Nesavich as the original exchange contract had provided. Mansfield Realty and its salesmen were paid a full 7% commission by Mrs. Bennett based on the $130,000 sale price, and by Lestoque based on the $55,000 price.
The evidence showed that Mansfield Realty incurred costs in obtaining a $70,000 loan on the Jamaica Apartments in the name of Nesavich. These included a $1,400 "service charge," a $75 closing fee, a $35 survey cost, and $22.50 for a credit report. None of these charges were passed along as such to Lestoque. In addition, Mansfield Realty paid Nesavich $1,000. Mansfield Realty and its salesmen pocketed the $15,000 difference between the $145,000 resale price and their $130,000 purchase price on the Jamaica Apartments, less the above costs. Although they termed this a commission on the resale, it was in addition to the 7% commission charged on the first sale and constituted a profit to them.
On discovering the Bennett-Nesavich transaction at $130,000, Lestoque commenced this action against Mansfield Realty and Parkin for damages for (1) breach of fiduciary duty based on secret profit acquired while acting as her agent, and (2) fraud based on misrepresentations in a *1149 cash flow statement presented to Lestoque by Parkin as to the amount of the payments on one of the loans on the Jamaica Apartments. The court concluded that there had been a breach of fiduciary duty, but that there was no fraud incident to the cash flow statement. Judgment was entered against defendants for $15,000, the full amount of the increase in price of the Jamaica Apartments, and for $15,300 representing 8½% interest which Lestoque "is obligated to pay" on the $15,000 from the closing date, December 18, 1972, to December 18, 1984.
There are no findings by the trial court to support the $15,300 portion of the judgment, and we can find no basis for it. There is no evidence in the record showing any damage to Lestoque from the erroneous representation in the cash flow statement or from any of the transactions, except for the secret profit which is the other part of the judgment. The judgment must, therefore, be reduced by $15,300.
As to the $15,000 judgment for breach of fiduciary duty, defendants contend that the exchange deal could never have been put together and consummated had it not been for the participation of Nesavich and the obtaining of the loans based on his credit. However, the defendants knew that the Jamaica Apartments were being purchased from Mrs. Bennett for $130,000 and that Lestoque was purchasing that same property on the same day for $145,000. No one told Lestoque, and she did not find out about the $15,000 price increase until several weeks after the closings.
Unless otherwise agreed, in all dealings affecting the subject matter of his agency, a real estate broker or salesman has a fiduciary duty to act with the utmost faith and loyalty in behalf of, and to act solely for, the benefit of his principal. McKinney v. Christmas, 143 Colo. 361, 353 P.2d 373; Treat v. Schmidt, 69 Colo. 190, 193 P. 666; M.S.R., Inc. v. Lish, Colo. App., 527 P.2d 912; see also § 12-61-113(1)(q), C.R.S.1973 (C.R.S.1963, 117-1-12(1) (r)). This duty requires that the agent make a full and complete disclosure to, and obtain the informed consent from, the principal before the agent can sell his own property to the principal or can himself buy the principal's property. See Williams v. Wagers, 117 Colo. 141, 184 P.2d 497; Pace v. Cline, 59 Colo. 138, 147 P. 672; Restatement (Second) of Agency § 389. Such a sale or purchase without the informed knowledge and consent of the principal is a breach of duty. Pace v. Cline, supra; 3 Am.Jur.2d Agency § 220. In such a transaction, if the agent makes a profit, he must account therefor to his principal. McKinney v. Christmas, supra.
This rule applies regardless of whether there is any harm to the principal as a result of the self-dealing by the agent. See Treat v. Schmidt, supra; Restatement (Second) of Agency § 389, comment c. In such event, the principal can disaffirm and avoid the deal or can ratify the deal and take the profits. See Williams v. Wagers, supra; Pace v. Cline, supra; Restatement (Second) of Agency § 403 and comment b.
After Lestoque discovered the difference between the purchase and resale price of the Jamaica Apartments, defendants offered to rescind the exchange, to reimburse her for expenses, and to give her $1,000 for her time and trouble. She refused and, instead, elected to keep Jamaica and seek the secret profit. This is her right, and defendants are not absolved of liability by their refused offer of rescission. Williams v. Wagers, supra.
Defendants maintain that at least they are entitled to a credit for the out-of-pocket expenses incurred by them in obtaining the financing on the Jamaica Apartments, including the loan costs and the $1,000 to Nesavich. As to an agent's right to a credit for his expenses from transactions on his own account in violation of his duty to his principal, we find no Colorado case in point and the cases from other jurisdictions are in conflict. In Judevine v. Hardwick, *1150 49 Vt. 180 (1876), the principal was allowed to recover only the net and not the gross profit. On the other hand, in Raymond Farmers Elevator Co. v. American Surety Co., 207 Minn. 117, 290 N.W. 231 (1940), the court disallowed expenditures incurred in making an improper profit, and in Tobin Grocery Co. v. Spry, 204 Cal. 247, 267 P. 694 (1928), the court held the agent liable for the profits, prohibited him from deducting losses, and rejected a proposed measure of repayment merely of the amount of money used, with interest, where the losses exceeded the profits.
In this case, defendants represented to Lestoque that the loans on the Jamaica Apartments were already in existence at the time of the signing of the exchange contract. Had this representation been true, there would have been no loan costs. Therefore, we see no basis here for allowing any credit for these expenses incurred in securing the loans. The $15,000 portion of the judgment is affirmed.
As all of the transactions, including the resale of the Jamaica Apartments, were completed on December 18, 1972, Lestoque would have been entitled to interest at the legal rate on the $15,000 judgment from that date. See Bankers Trust Co. v. International Trust Co., 108 Colo. 15, 113 P.2d 656; § 5-12-102, C.R.S. 1973 (1971 Perm.Supp., C.R.S.1963, 73-12-102). However, since in her complaint she asked for interest only from the date of filing the complaint, interest from March 27, 1973, to May 7, 1974, shall be part of the judgment. See Clark v. Hicks, 127 Colo. 25, 252 P.2d 1067.
Lestoque has not claimed any damages from Mansfield Realty's purchase of her Kingston Apartments, nor has she cross-appealed the trial court's denial of her claim for return of the $3,850 commission she paid. Therefore, these matters are not issues in this appeal.
The judgment is modified and, as modified, affirmed, and the cause is remanded for further proceedings consonant herewith.
SILVERSTEIN, C. J., and COYTE, J., concur.