691 P.2d 874

**A. Daniel SWALLOWS,
Plaintiff-Appellant and
Cross-Appellee,**

v.

**Ted D. LANEY and Birka Laney, his
wife, Defendants-Appellees and
Cross-Appellants.**

No. 14813.

Supreme Court of New Mexico.

Nov. 13, 1984.

Rehearing Denied Dec. 13, 1984.

J. Wayne Woodbury, Silver City, for plaintiff-appellant and cross-appellee.

Thomas G. Fitch, Socorro, for defendants-appellees and cross-appellants.

## OPINION

FEDERICI, Chief Justice.

A. Daniel Swallows (Swallows) brought this action against Ted and Birka Laney (Laneys) in the District Court of Catron County alleging breach of contract for the sale of land. The district court ruled in favor of the Laneys, and Swallows appeals. This case involves an important question of first impression in New Mexico: whether a fiduciary relationship between a real estate broker or salesperson and his principal may continue to exist under certain circumstances after the expiration of a written listing agreement.

The Laneys entered into two exclusive right-to-sell listing agreements with Western Farm Management Company for the sale of three tracts of land in Catron County. These three tracts consisted of a 7-acre parcel of land with a home and water rights, a 19-acre parcel of vacant land, and a 48.6-acre parcel of land with water rights. The 48.6-acre parcel is the subject matter of this suit. Swallows was the real estate salesman who arranged the listings. He was unable to sell any of the tracts prior to the termination date of the written listing agreements on October 15, 1980.

In early February 1981, Swallows and the Laneys entered into negotiations concerning the possible purchase by Swallows of the 48.6-acre parcel. On April 1, 1981, Swallows prepared, signed and mailed a purchase agreement to the Laneys in Ava, Missouri, where the Laneys resided. On April 13, 1981, the Laneys executed the agreement which provided for a purchase price of $72,500 and a closing date of April 30, 1981. Swallows and the Laneys orally agreed to postpone the closing date until May 26, 1981. The Laneys arrived in Reserve, New Mexico on May 23, 1981, to close the sale, but were unable to meet with Swallows until the evening of May 26, 1981, at which time they learned that Swallows was not prepared to close the transaction. The Laneys advised Swallows that they were unwilling to postpone further the closing date or engage in any more negotiations concerning the transaction. They returned to Swallows his earnest money of $100. The Laneys rejected any attempt by Swallows to perform under the contract after the May 26, 1981 closing date. Consequently, Swallows brought this suit for breach of contract.

The district court found for the Laneys on two separate grounds. First, it held that Swallows had breached his fiduciary duty toward the Laneys and that as a result, the purchase agreement was null and void as a matter of public policy. Second, the district court found that Swallows had failed to close the transaction in a timely manner so that the purchase agreement expired by its own terms. It held, therefore, that Swallows had no right to seek performance from the Laneys after the expiration of the contract. We agree with the district court on both points.

Swallows first contends that the district court erred in finding that a fiduciary relationship existed between him and the Laneys at the time of the negotiation and execution of the land sales contract for the 48.6-acre parcel because the listing on the property had expired at this time. We disagree.

An owner-broker relationship is clearly established during the term of a listing agreement. *Talley v. Security Service Corp.*, 99 N.M. 702, 663 P.2d 361 (1983). It is well-established in New Mexico law that a real estate agent stands in a fiduciary relationship with his principal and must reveal all facts within his knowledge which might affect his principal's decisions, rights and interests. *Poorbaugh v. Mullen*, 99 N.M. 11, 653 P.2d 511 (Ct.App.), *cert. denied*, 99 N.M. 47, 653 P.2d 878 (1982); *Master Builders, Inc. v. Cabbell*, 95 N.M. 371, 622 P.2d 276 (Ct.App.1980), *cert. denied*, 95 N.M. 426, 622 P.2d 1046 (1981). As a fiduciary, a broker or salesperson holds a position of great trust and confidence and must act in utmost good faith. *Amato v. Rathbun Realty, Inc.*, 98 N.M. 231, 647 P.2d 433 (Ct.App.1982).

The National Association of Realtors in the Preamble to its Code of Ethics recognizes the trust placed on members of its profession. It states:

The REALTOR, therefore, is zealous to maintain and improve the standards of his calling and shares with his fellow REALTORS a common responsibility for its integrity and honor. The term REALTOR has come to connote competency, fairness, and high integrity resulting from adherence to a lofty ideal of moral conduct in business relations. No inducement of profit and no instruction from clients ever can justify departure from this ideal.

This code is applicable to all members of New Mexico's regional Boards of Realtors.

Strict adherence to these fiduciary duties and obligations by a real estate broker or salesperson is especially important when the broker or salesperson buys the listed property for himself. The opportunity for overreaching by the broker or salesperson, or for taking advantage of facts and information within his specialized knowledge, is great. For this reason, this Court has previously recognized, when a real estate broker or salesperson buys listed property from his principal *before* the listing has expired, that:

In addition to the duty to disclose his interest as a purchaser, a real estate broker is under a legal obligation to make a full, fair and prompt disclosure to his employer of all facts within his knowledge which are or may be material, or which might affect his principal's rights and interest or influence his action relative to the disposition of the property.

*Iriart v. Johnson,* 75 N.M. 745, 748, 411 P.2d 226, 227–28 (1965). In *Iriart,* we found that the real estate agent had breached his fiduciary duty by failing to disclose his true role in the transaction and facts within his knowledge concerning property values in the area.

New Mexico appellate courts have not previously addressed the question of whether a real estate broker or salesperson should be bound by these same fiduciary duties and legal obligations when he buys listed property *after* the listing agreement has expired. We believe that the expiration or absence of a listing agreement, by itself, should not absolve the real estate broker or salesperson from these obligations and duties. Additional circumstances concerning the agent-principal relationship should be inquired into to determine if, in fact, a fiduciary relationship continues to exist.

Other states have found a fiduciary relationship to exist between a real estate agent and a vendor in the absence of a written listing agreement. In *Black v. Dahl,* 625 P.2d 876 (Alaska 1981), the Supreme Court of Alaska held that a real estate agent was liable for breach of fiduciary duty although no written listing agreement had been entered into and in spite of Alaska's law requiring all real estate listings to be in writing and Alaska's statute of frauds. That court rejected the broker's contention that a lesser fiduciary duty is owed in the absence of a listing. In *Starkweather v. Shaffer,* 262 Or. 198, 497 P.2d 358 (1972), the Supreme Court of Oregon disagreed with a real estate broker's assertion that no fiduciary duty is owed merely because there was no written listing agreement. In that case the court stated:

A fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence.

*Id.* at 205, 497 P.2d at 361. The court found that the statute requiring a real estate listing to be in writing was to protect the public against fraud, not to relieve a real estate agent from his duties and obligations.

■ We conclude that the fiduciary relationship between a real estate broker or salesperson and his principal may, under certain circumstances, exist in the absence or after the expiration of a written listing agreement. To determine whether particular circumstances give rise to such a relationship, a court should consider the following factors, among others, to be relevant:

1. The course of conduct between the real estate broker or salesperson and the principal.

2. The extent to which the broker or salesperson holds himself out to the principal as a real estate advisor and confidant.

3. The degree of the principal's dependence on the broker or salesperson for advice.

4. The sophistication of the principal in real estate matters.

5. The familiarity of the principal with the value of the subject property.

■ In the case at bar, the district court correctly found that a fiduciary relationship existed between Swallows and the Laneys at the time they negotiated and entered into the purchase agreement for the 48.6-acre tract. The record shows that after the expiration of the listing agreements on October 15, 1980, Swallows continued to attempt to sell the listed properties for the Laneys and thus to act as agent on their behalf. At the same time Swallows was negotiating to buy the 48.6-acre tract, he was also attempting to sell another piece of property for the Laneys that had not previ-

ously been listed for sale by Swallows. A listing agreement on this property was finally signed on May 26, 1981, the day the Swallows-Laney transaction was to close, but was backdated to May 1, 1981. Swallows was successful in selling this property and received a commission on it. These facts show that Swallows continued to act as the Laneys' real estate agent, continued to give them advice on real estate matters, and the Laneys continued to rely upon his aid. Under such circumstances, Swallows' negotiation with the Laneys to purchase for his own account the 48.6-acre tract cannot be considered to have been at arms-length.

We are not suggesting that once a real estate broker or salesperson has acted as agent for the sale of a property, he may not purchase it himself. What we do hold is that having once acted as agent, the broker or salesperson has the additional obligation of full and complete disclosure of all pertinent facts within his knowledge concerning the property if the fiduciary relationship between the agent and principal has continued to exist. If this is not done, the negotiations concerning the purchase of the property might be unequal, and the realtors' ideals of fairness, high integrity, and strict moral conduct could be jeopardized.

These same concerns were expressed in *Williams v. Wagers*, 117 Colo. 141, 184 P.2d 497 (1947), a case in which a real estate agent, who attempted to buy his principal's property without disclosing this fact to the principal, sued the principal for specific performance of the contract. Although the record disclosed no listing agreement between the agent and the principal covering the subject property, the Colorado Supreme Court, nevertheless, upheld the trial court's finding that a fiduciary relationship had been established between the parties by their actions. The Supreme Court of Colorado concluded that the agent's failure to disclose all the facts concerning the entire transaction was a breach of his fiduciary duty. The court said:

But when the usual fiduciary relationship of principal and agent already exists, it is evident that the agent can not properly deal with his principal as an independent buyer, or as one having a net price contract, unless and until he has made a complete disclosure of all facts concerning his principal's property which he has had or has acquired during the fiduciary relationship, so that both parties may be put in position where they can deal with each other on equal terms, and with all facts possessed by the agent disclosed to his principal.

*Id.* at 149, 184 P.2d at 500–01.

After properly ascertaining that a fiduciary relationship existed, the district court was correct in finding that Swallows had breached his fiduciary duty to the Laneys. To determine whether a real estate broker or salesperson has breached his fiduciary duty in such a situation, we believe that a court should consider, among other factors, the fairness of the price paid for the property by the broker, bearing in mind the fair market value of the property at the time of the sale, and the actual disclosures made by the broker or salesperson to the principal.

Although Swallows did disclose to the Laneys that he was purchasing for his own account, the record shows that he did not disclose all facts within his knowledge that were or might have been material to the Laneys' decision to sell to him. Swallows never fully advised the Laneys of the potential value of their property if sold in segments rather than as a whole. Swallows clearly had extensive knowledge of land values in the area and market prices, yet when the Laneys specifically asked Swallows the value of their water rights, Swallows told them he did not know, despite the fact that he had already been negotiating to sell some of the Laneys' water rights, which he hoped to purchase.

If a breach in fiduciary duty is found, the transaction is void as against public policy whether the broker has profited thereby or not. *Iriart v. Johnson*, 75 N.M. 745, 411 P.2d 226 (1965). For this

reason alone, Swallows is prevented from specifically enforcing the contract.

 There is, however, another reason why Swallows cannot specifically enforce the contract. Swallows also contends that the district court erred in finding that he was not prepared to close the transaction on May 26, 1981. The purchase agreement specified an April 30, 1981 closing date. It provided that time was of the essence. The closing date was postponed by oral agreement of the parties to May 26, 1981. Swallows admits that he did not tender any money to the Laneys on that day. After that time the agreement expired, unless again mutually extended, and was no longer enforceable by Swallows. The district court found that the agreement did not extend beyond May 26, 1981. We agree with the district court.

The findings of a trial court will not be disturbed if supported by substantial evidence. *Sandoval v. Department of Employment Security*, 96 N.M. 717, 634 P.2d 1269 (1981). This Court may not substitute its judgment of the facts for that of the district court. Only the district court, as trier of the facts, may weigh the evidence and determine a witness' credibility. *Lewis v. Bloom*, 96 N.M. 63, 628 P.2d 308 (1981).

We find there to be substantial evidence in the record to support the district court's finding that Swallows was unprepared to close on May 26th. The record indicates that the Laneys came to New Mexico in May from their home in Missouri specifically to close the transaction with Swallows; that they repeatedly tried to contact Swallows; that they finally reached him by telephone in Taos, New Mexico on the night of May 25th; and, that he told them he had not yet completed the survey and did not know if he could meet with them or not. When he did finally meet with them on the night of the 26th, he did not tender any money or otherwise attempt to close the transaction. Nothing in the record indicates that the closing date was again mutually postponed by the parties.

 On cross-appeal, the Laneys contend that the district court erred in not awarding them per diem and mileage expenses for appearing as witnesses in this case. The district court was correct in denying these costs. Costs are recoverable only when authorized by statute. *Read v. Western Farm Bureau Mutual Insurance Co.*, 90 N.M. 369, 563 P.2d 1162 (1977), (citing *Reck v. Robert E. McKee General Contractors*, 59 N.M. 492, 287 P.2d 61 (1955)). There is no statute or court rule that awards a successful party per diem and mileage expenses for appearing as a witness in his own case. It is the general rule that parties are not entitled to be treated as ordinary witnesses for the purposes of fees. *Hinton v. Scharoun Industries*, 41 N.Y.S.2d 595 (1943); *Villanueva v. Rodriguez*, 300 S.W.2d 668 (Tex.Civ.App. 1957); *Bostrom v. Duffield*, 28 S.W.2d 610 (Tex.Civ.App.1930); 20 C.J.S. *Costs* § 222 (1940).

 Finally, the Laneys assert that the district court erred in denying their expenses upon Swallows' failure to admit to several statements in their requests to admit. The district court stated in its order that the expenses should be denied "inasmuch as Rule 37(C) and Rule 26(B) of the New Mexico Rules of Civil Procedure, primarily direct themselves toward the genuineness of documents as opposed to facts relative to the parties' respective positions in connection with this action, and therefore costs for failure to admit are not allowable."

NMSA 1978, Civ.P.R. 37(C) (Repl.Pamp. 1980), provides that expenses shall be allowed on failure to admit,

[U]nless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable grounds to believe that he might prevail on the matter, or (4) there was another good reason for the failure to admit.

Compliance with an earlier version of this same subdivision was mandatory upon the trial court. *Schrib v. Seidenberg*, 80 N.M.

573, 458 P.2d 825 (Ct.App.1969). If the trial court denied the expenses, it had to make findings pursuant to the rule. *Id.*

The Laneys maintain that the district court, in its order, made none of the four findings specified in the rule and that the case should, therefore, be remanded for compliance with the rule. We disagree.

The district court judge did state a reason, and although he did not use the specific language of Rule 37(C), his reason clearly goes to the third possible finding, that the party "had reasonable grounds to believe he might prevail on the matter." The district court judge determined that Swallows' answers reflected his position in the litigation. This expense was properly denied.

The district court is affirmed on all issues.

IT IS SO ORDERED.

RIORDAN and STOWERS, JJ., concur.