T–A–L–L, INC., a Colorado corporation,
Plaintiff–Appellant and Cross–Appellee,

v.

MOORE AND COMPANY, a Colorado
corporation, and H.L. Richison, De-
fendants–Appellees and Cross–Appel-
lants.

No. 85CA1147.

Colorado Court of Appeals,
Div. III.

Oct. 13, 1988.

Rehearing Denied Nov. 25, 1988.

Bennett S. Aisenberg, Denver, Edward
A. Brown, Brighton, Holme, Roberts &
Owen, Daniel S. Hoffman, Denver, for
plaintiff-appellant and cross-appellee.

Rothbergher, Appel, Powers & Johnson,
Richard K. Clark, Laura Ann Wing, Den-

ver, for defendant-appellee and cross-appellant Moore and Co.

Hall & Evans, Eugene O. Daniels, Denver, for defendant-appellee and cross-appellant H.L. Richison.

STERNBERG, Judge.

The plaintiff, T–A–L–L, Inc. (seller), sued defendants, Moore and Company (broker) and its salesman, H.L. Richison (salesman), for damages resulting from their handling of a real estate transaction. The trial court held defendants had breached their fiduciary duty and entered judgment against them ordering repayment of the portion of the commission they received upon the sale of seller's property, but declined to award damages for specific monetary loss in the nature of lost profits. Seller appeals, claiming it was entitled to be reimbursed the full amount of the commission. Asserting the court erred in ruling they breached their fiduciary duty, defendants cross-appeal. We agree with seller's contention, disagree with the defendants' assertion, and therefore, we affirm in part and reverse in part.

Facts found by the trial court and supported by the evidence include the following. Seller had listed an 80–acre property for sale with the broker. Under the listing agreement, seller agreed to pay broker a commission of 10% of the sale price. Because of the efforts of the salesman, a contract was entered into on March 1, 1982, for sale of the property by seller to Newcomb–Weidner Co. (purchaser) or its assigns for approximately $1,400,000. As part of this transaction, one-half of the broker's commission was to be paid to the purchaser, which was itself a registered real estate company, the principals of which were licensed salesmen.

On March 5, the salesman was contacted by another real estate agent who informed him that he had a third party, DG Shelter Products (DG), interested in purchasing the property for $1,600,000. The salesman told DG's agent about the March 1 contract. That agent then requested that the salesman contact purchaser to see if it would be interested in dealing with DG. A brochure describing DG and a xerox copy of the DG offer were left with the salesman.

That day, the salesman attempted, without success, to contact the seller's representative. Two days later he told a principal of purchaser about the DG proposal and set up a meeting between purchaser and DG. At the commencement of the meeting, the salesman called seller's representative and told him about the $1,600,000 DG offer, read the contingencies which he said were not good for seller, and reminded him that seller was bound on its March 1 contract with purchaser. Seller did not authorize the salesman to disclose to DG anything about the March 1 contract or to disclose to purchaser anything about the DG proposal.

As a result of the meeting, purchaser assigned its contract rights to DG for $300,000. Later, the salesman tried, without success, to renegotiate the 50–50 commission split to increase the broker's share because of the profit made by purchaser on its assignment to DG.

Thereafter, on advice of counsel, seller recognized the assignment, deeded the property to DG, and the approximate $140,000 commission was paid out of the sale proceeds, one-half to the broker and one-half to purchaser. Purchaser, in turn, paid $20,000 to DG's agent.

Seller then commenced this action, seeking damages and a return of the commission based on its claim that the broker and salesman breached their fiduciary duty to seller by withholding material facts from it and by disclosing confidential information to DG and purchaser without authorization from seller. The trial court awarded seller the half of the commission broker received. Both sides appeal the trial court's judgment.

I.

The broker and salesman contend the trial court erred in ruling, as a matter of law, that they breached their fiduciary duty to seller. We disagree.

■ "Unless otherwise agreed, in all dealings affecting the subject matter of his

agency, a real estate broker or salesman has a fiduciary duty to act with the utmost faith and loyalty in behalf of, and to act solely for, the benefit of his principal." *Lestoque v. M.R. Mansfield Realty, Inc.,* 36 Colo.App. 32, 536 P.2d 1146 (1975). In order to perform this duty, he is obligated, until the time of closing, to disclose to his principal all facts which he has or has acquired during their relationship which might reasonably affect the decisions of his principal, and conversely, he must not disclose confidential matters to third parties. *Wheeler v. Rabe, Inc.,* 198 Colo. 311, 599 P.2d 902 (1979).

■ Based upon the evidence, the trial court found eight separate acts, each of which it held constituted a breach by the broker and salesman of their fiduciary duty to seller. These are:

(1) Disclosing to purchaser on March 7 that the agent for DG had submitted an offer on the property with the price of $1,600,000;

(2) Arranging a meeting about the DG offer with purchaser for March 8 without first disclosing the DG offer to seller and without getting its permission to meet with purchaser concerning the offer;

(3) Failing to ask for seller's permission to reveal the DG offer to purchaser;

(4) During the March 8 phone call from the salesman to seller's representative at the commencement of the meeting, failing to reveal the March 7 disclosure to purchaser and not telling him that purchaser's principal was at that very moment in the salesman's office to discuss the DG offer;

(5) Failing to offer any advice regarding ways to prepare or pursue the DG offer (a full cash price offer) as a backup offer or some other way to deal with DG;

(6) Discussing the details of the DG offer with purchaser on March 8 without the express permission of seller;

(7) Holding and arranging a meeting on March 10 with DG's real estate agent and purchaser without the express and informed permission of seller;

(8) Seeking a larger percentage (60–40) of the commission from purchaser because of the assignment, which was arranged without seller's permission and which did not result in a monetary gain for seller.

In light of these findings, the totality of the salesman's conduct evidences a violation of his duty to act with loyalty on behalf of the seller; thus, the trial court's conclusion that salesman had breached his fiduciary duty finds support in the record. *See Lestoque v. M.R. Mansfield Realty, Inc., supra.*

## II.

The broker and salesman contend that, in any event, the seller is not entitled to recover from them because it failed to prove that it incurred any injury, damages, or losses, or that they profited as a result of the breach of fiduciary duty. Conversely, seller contends that it should have been awarded the entire amount rather than half of the commission paid. We agree with the seller.

It has long been the law in Colorado that a broker who breaches his fiduciary duty forfeits his right to a commission. In *Collins v. McClurg,* 1 Colo.App. 348, 29 P. 299 (1892), the court held:

"The intentional concealment of important and material facts from the knowledge of his principal by a broker employed to sell real estate will deprive him of the right to commission for procuring a buyer."

This rule has been followed in more recent cases: *Elijah v. Fender,* 674 P.2d 946 (Colo.1984); *White v. Brock,* 41 Colo.App. 156, 584 P.2d 1224 (1978); *Lestoque v. Mansfield Realty, Inc., supra.*

■ The broker and salesman argue there must be some detriment to or loss suffered by the seller in order for there to exist a basis for depriving them of their commission. However, seller is requesting return of the real estate commission paid based on the equitable theory of unjust enrichment, wherein traditional legal principles of damage and loss do not apply.

■ An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty. Restatement (Second) of Agency § 469

(1958). And, comment a to that Restatement section elaborates on this principle, explaining:

"An agent who, without the acquiescence of his principal, acts for his own benefit or for the benefit of another in antagonism to or in competition with the principal in a transaction is not entitled to compensation which otherwise would be due him because of the transaction. *This is true even though the conduct of the agent does not harm the principal,* and even though the agent believes that his conduct is for the benefit of the principal and that he is justified in so acting." (emphasis supplied)

■ We conclude that where, as here, a broker has breached his fiduciary duty, that broker is not entitled to any compensation inasmuch as it would be unjust to allow him to retain a commission when he has not acted with the utmost good faith toward his principal.

Seller's inability to prove damages goes only to the issue of consequential damages, the claim for which was denied by the trial court. Such inability to prove damages does not prevent forfeiture of commission paid or to be paid. The fact that there was no injury done is not determinative because the rule is not intended to remedy an actual wrong; rather, it is preventative of the possibility of such wrong. *See Faultersack v. Clintonville Sales Corp.,* 253 Wis. 432, 34 N.W.2d 682 (1948).

The forfeiture of commission automatically follows the finding that the broker and salesman breached their fiduciary duties.

■ Because of the agreement between broker and purchaser to split the commission, the broker retained only half of the commission paid by seller. Broker argues it should not be ordered to forfeit any more compensation than it actually retained. However, the payment of one-half of the commission to the purchaser by broker was of no moment to seller; seller's only concern was paying approximately $140,000 commission for services rendered by broker in finding a purchaser *and* in fulfilling all of its fiduciary obligations. *See* Restatement (Second) of Agency § 469.

That part of the judgment finding a breach of fiduciary duty is affirmed, that part of the judgment awarding damages is reversed, and the cause is remanded with directions that judgment be entered in the amount of $140,246.74 plus interest, from the date of the original judgment.

JONES, J., concurs.

VAN CISE, J., dissents.

VAN CISE, Judge, dissenting.

I agree with Part I of the majority opinion. I disagree with Part II, and therefore, respectfully dissent.

In my view the broker and salesman were correct in their contention that seller is not entitled to recover from them because it failed to prove that it incurred any injury, damages, or losses or that the broker or salesman profited as a result of the breach of fiduciary duty.

It is axiomatic that to recover damages for misconduct (other than recovery of profits resulting therefrom), a necessary element is proof of actual loss by, or detriment to, the wronged party. *Carey v. After the Gold Rush,* 715 P.2d 803 (Colo.App. 1986). Specifically, in order for a principal to recover from its agent on a claim of breach of fiduciary duty, the evidence must establish, not only that the agent was acting as a fiduciary for the principal and that the agent breached that duty, but also that the principal incurred damages or losses and that the agent's breach was a cause of the damages or losses. *Rupert v. Clayton Brokerage Co.,* 737 P.2d 1106 (Colo.1987).

In this case, the trial court concluded: "[T]his court does not feel [seller] has met its burden to prove damages. [Seller] has proven the fiduciary breach resulted in lost opportunities, but it could be only but surmise and speculation to say that a specific monetary loss occurred."

I agree with that conclusion. My reading of the record reveals that seller had a valid contract which purchaser could have required to be specifically performed. Also, when told by the salesman about DG's interest in the property, seller re-

sponded that it was not interested in a contract with contingencies. Finally, DG's position was that if a backup contract involved litigation, it would look elsewhere for a deal. Therefore, any hope on the part of seller for an option contract or backup offer was speculative.

While it is true that it was seller's right to control confidential information about its deal, no harm was shown as a result of the breach of that right. Indeed, seller concedes in its appellate briefs that the breaches committed by the broker and salesman only *potentially* harmed seller. Therefore, as a matter of law, seller failed to prove any actual loss or detriment.

An award of damages based on misconduct without actual harm takes on the cast of punishment of the wrongdoer. In a civil suit, damages awarded to punish wrongful conduct are labeled punitive or exemplary damages. These are awarded pursuant to a statutory scheme, *see* § 13–21–102, C.R. S. (1987 Repl.Vol. 6A), but only if there are actual damages. *Wagner v. Dan Unfug Motors, Inc.,* 35 Colo.App. 102, 529 P.2d 656 (1974). There were none here.

Also, this case is distinguishable from *Collins v. McClurg, Elijah v. Fender, White v. Brock,* and *Lestoque v. Mansfield Realty, Inc.,* cited and relied on by the majority. In each of those cases, the principal incurred losses or the agent obtained secret profits as a result of the agent's breach of fiduciary duty.

By requiring return of the real estate commission "on the equitable theory of unjust enrichment," the majority ignores the facts in this case. It is undisputed that in this transaction seller received what he had contracted for and the broker and salesman received the agreed upon commission and nothing more. Thus, by its ruling, the majority delivers a windfall to, and unjustly enriches, the seller.

I would reverse the judgment and remand with directions to dismiss the complaint.