614 P.2d 26

Ted ROSS dba Syntronix Industries, Plaintiff-Appellee Cross-Appellant,

v.

George F. RINGSBY and Esther Ringsby, Defendants-Appellants Cross-Appellees.

No. 4226.

Court of Appeals of New Mexico.

June 10, 1980.

Oliver Burton Cohen, Cohen & Aldridge, Albuquerque, for defendants-appellants cross-appellees.

Paul D. Gerber, Gerber & Ives, Santa Fe, for plaintiff-appellee cross-appellant.

## OPINION

ANDREWS, Judge.

In this action appealing a judgment for plaintiff-appellee arising out of a claim of detainer and a counterclaim for specific performance on a contract, we are asked to resolve two questions. First, where the trial court, sitting without a jury, found a counter-offer did not operate as acceptance of a contract, was there sufficient evidence to support the finding? Second, if a contract did exist, should the trial court have allowed specific performance? These issues are to be resolved by our determination of whether terms which were altered in an acceptance of a contract sufficiently altered the substance of the contract as to create a counter-offer.

Plaintiff (Ross) listed a residence for sale with a realtor. After that listing had expired, defendant (Ringsby) made an offer through a selling realtor and original listing realtor, for the purchase of the residence. A conference telephone call was held which involved agents from both realtors, the plaintiff and defendant. Pursuant to that conference, defendants prepared an offer to purchase and mailed it to the plaintiff.

Before receiving the offer to purchase, plaintiff sent a mailgram accepting the purchase offer agreed upon over the telephone.

This mailgram was admitted as an exhibit but has not been included in the appellate record. It appears from the testimony that no contract was formed by the mailgram; a written purchase agreement was contemplated. Unfortunately, the terms of the offer of purchase the defendants had mailed did not coincide with the subject matter of the phone conversation. Therefore, the plaintiff mailed a proposed addendum and a lease agreement for the period prior to the actual sale. The defendants' broker intercepted the addendum; never showing it to the defendants.[1] Defendants, assuming they had a valid agreement, moved into the building and executed the lease which had been sent by plaintiff. First month's rent was paid. On the closing date specified in the purchase offer the closing did not occur. Sixteen days later the plaintiff, believing that the defendants had rejected the terms of the addendum they had actually never seen, sent a mailgram stating that the contract was no longer in effect. Forty-five days later plaintiff served notice to quit, and when the defendants refused, this action ensued.

■ Defendants contend that there was not substantial evidence adduced at trial to support findings of fact numbers 5, 6 and 8.[2] We note that a certain degree of confusion is presented in this case. The source of this confusion seems to be the final sentence of the trial court's finding of fact number 8.

\* \* \* \* \* \*

8. One of the additional conditions added to the acceptance was a provision that the seller had the right to continue offering the property for sale and if a subsequent offer were received, the defendants would have the right of first refusal to meet such new offer. This changed the sales contract to a modified option to buy with right of first refusal.

Though presented as a finding of fact, we believe that the finding that the addition of certain conditions resulted in the alteration of a sales contract into a modified option to buy with right of first refusal is actually a conclusion of law. As such is the case, the proper mode of review is not whether substantial evidence as to the question was presented—but, whether the trial court correctly applied the law to the facts.

■ To determine whether the law was correctly applied we must view the facts of the case in a manner most favorable to the plaintiffs, as they prevailed at trial. To do so, we "indulge all reasonable inferences in support of the verdict, and will disregard all inferences or evidence to the contrary." *Mascarenas v. Gonzales*, 83 N.M. 749, 497 P.2d 751 (Ct.App. 1972).

There is little controversy as to what was actually written, or when the writings were sent. The only question presented is the legal implication of those writings. The addendum which is the basis of this question reads as follows:

\* \* \* \* \* \*

1. The finding by the court as to this was that: The new and additional conditions added by plaintiff were transmitted to the defendants' broker, but were not transmitted to the defendants nor at any time accepted by the defendants. Both agents agreed that there were no material changes made in the purchase agreement by the amendment, and decided that it was not necessary to discuss the amendment with the defendants, or to obtain the defendants' approval to the amendment.

2. Actually the defendants complain of findings numbers 5 and 6, but it is not those findings with which they disagree; instead it is with their cumulative effect in number 8.

\* \* \* \* \* \*

5. On or about the 24th day of August, 1977, approximately 3 days after the listing had expired, defendants submitted a written offer to

plaintiff containing the terms and conditions of an Offer to Purchase the Eastridge Residence by defendants. This offer was made through Burkett Enterprises, as selling agent, and Ben Chavez Realty, as listing agent. The terms of the offer were discussed by a long distance conference telephone call, which was followed by the written offer to purchase, prepared and executed by defendants, and forwarded to the plaintiff. The offer included coupling a 10-month lease agreement with a purchase agreement.

\* \* \* \* \* \*

6. On or about the 29th day of August, 1977, plaintiff returned the Offer to Purchase submitted by defendants which he had signed but to which he had added new and additional conditions not contained in the written offer submitted by defendants.

(C) Seller reserves the right to continue taking "Back-Up" offers for the subject property until such time as buyer indicates in writing that all contingencies including the contingency for the sale of buyer's existing real property, the contingency pursuant to obtaining financial arrangements for the purchase of subject property, approval of title report and policy, and any and all contingencies pursuant to the purchase of the subject property, expressed or implied. If seller receives a "Back-Up" offer, seller agrees to so notify buyer and upon notification, buyer will have seven (7) days during which buyer will have the *exclusive right of first refusal* to proceed with this purchase agreement as outlined in this transaction at this time. Failure of buyer to notify seller in writing that all contingencies have been waived shall be deemed as an automatic release to seller from buyer of all obligations incurred by the execution of this purchase agreement, excepting those obligations incurred by buyer and seller under the terms and conditions of the lease agreement for the subject property.

Although the original listing of the property by the realtor had lapsed, it is clear that all involved knew the realtors were the agents of the parties. *See Totah Drilling Co. v. Abraham*, 64 N.M. 380, 328 P.2d 1083 (1958). Thus, as agents of the parties received or were informed of all relevant writings, we need only treat the effect of those writings.

■ In the formation of a contract, an offeror is entitled to know in clear terms whether the offeree accepts his proposal. *Polhamus v. Miller*, 50 N.M. 236, 175 P.2d 196 (1946). In *Pickett v. Miller*, 76 N.M. 105, 412 P.2d 400 (1966), defendants sought to avoid a contract for real property by alleging a condition stating that present tenants had to release their additional one year option on the property was a new requirement at variance with the original offer. The court noted "that an offer must be accepted unconditionally and unqualifiedly by the offeree." However, that court also noted:

[a]lmost as general in its application as the rule that an offer must be accepted unconditionally, is the qualifying rule that, "an acceptance, however, is not inoperative as such merely because it is expressly conditional, if the requirement of the condition would be implied from the offer, though not expressed therein."

■ In this action we are urged to accept the fact that a reservation of the right to continue to take "back-up" offers is a common practice. Thus, it is argued, both parties must have known of this accepted practice—and, as such was the case, it was merely a condition which requirement was implied from the offer. We cannot accept this proposition. The argument concerning common practice is argued in the briefs but the trial court was not asked to find, and made no finding concerning the alleged common practice. The trial court did find that additional conditions were added to the acceptance and, as we have pointed out, the trial court concluded the additional conditions changed the sales contract. The trial court also concluded there was no binding contract of sale or lease agreement. These conclusions were proper from the findings made. We cannot hold, as a matter of law, that there was a common practice, because such is a factual question. The trial court was not asked to find a common practice.

■ The trial court awarded plaintiff the reasonable rental value of the premises through April 28, 1978 which was the date defendants vacated the premises. The trial court refused plaintiff's requests to award rental value to the date of the trial court's decision, to award utility charges paid by plaintiff during defendants' occupancy, and to award attorney fees. Plaintiff's cross appeal is based on the refusal of these requests.

To the extent the cross appeal is based on the lease, the requests were properly refused. The trial court ruled the lease was an integral part of the offer to purchase and not severable therefrom. Inasmuch as there never was an executed contract to purchase, requests based on the lease, apart

from the contract to purchase, were properly refused.

The cross appeal is also based on a claim of equity. There is evidence that "friends" of plaintiff were exercising control over the premises immediately after defendants vacated and that defendants exercised no control after they vacated. There is evidence, supporting an inference, that there never was an understanding concerning utilities, apart from the lease.

In equity jurisprudence, a trial court "will use its extraordinary powers only to the end that justice may be done in each individual case presented." *Pugh v. Phelps*, 37 N.M. 126, 19 P.2d 315 (1932). The threatening notice posted by defendants upon vacating the premises was outrageous, but no more so than the conduct of "friends" of plaintiff directed to the defendants. Under the evidence, the trial court could properly refuse plaintiff's requested findings and, under equity rules, could refuse an award based on equity. Therefore, the cross appeal is without merit. As the contract did not exist, we need not reach the issue of specific performance. The decision of the trial court is affirmed.

IT IS SO ORDERED.

WOOD, C. J., and WALTERS, J., concur.