663 P.2d 361

**Kirby TALLEY, Jack Daugherty, Rudy P. Hopp, d/b/a R.P. Hopp Realty, and Maurice P. Sheehan, d/b/a Sheehan Realty, Plaintiffs-Appellants.**

v.

**SECURITY SERVICE CORPORATION, a New Mexico corporation, Defendant-Appellee.**

No. 14113.

Supreme Court of New Mexico.

May 19, 1983.

Richard B. Walker, Albuquerque, for plaintiffs-appellants.

Barnhart & Associates, P.A., Stephen D. Bass, Albuquerque, for defendant-appellee.

## OPINION

GALVAN, District Judge.

Plaintiffs/Appellants sued Security Service Corporation (Security) for breach of contract to recover a real estate brokerage commission. After trial to the bench, the court entered judgment denying all relief. Upon appeal, we affirm.

We discuss four issues:

1. Whether for purposes of a broker's commission, sale of the property in question related back to the time the option was granted.

2. Whether Security prevented the brokers from performing under the listing agreement.

3. Whether the commission was waived.

4. Whether equity will intervene.

The facts of this case are as follows. On June 1, 1979, Appellants Talley and Daugherty agreed to sell Security seventeen acres of unimproved land. . As part of the agreement, Security gave Talley and Daugherty the right to sell twenty-six lots in the subsequently platted tract for a ten percent commission. The pertinent language in the contract granting that right reads as follows:

> The Seller [Talley and Daugherty] shall have the right to sell to an approved builder, at terms acceptable to the Buyer's bank, twenty-six (26) single family lots and receive a ten percent (10%) sales commission. This listing privilege expires one hundred eighty (180) calendar days after the recordation of the plat for said tract. The minimum sales price of the lots will be determined by the Buyer [Security] including commission.

Talley was a real estate salesman for Appellant Maurice P. Sheehan, d/b/a Sheehan Realty, and Daugherty was a real estate broker for Appellant Rudy P. Hopp, d/b/a R.P. Hopp Realty. On December 11, 1979, Security entered into a listing agreement with R.P. Hopp Realty and Sheehan Realty. In compliance with the contract as set out above, the brokers received an exclusive listing on twenty-six lots. The listing was to begin on December 11, 1979, and continue until June 12, 1980. The listing carried an attachment identifying the twenty-six lots selected by Talley and Daugherty and the price for each lot as set by Security.

On December 28, 1979, Security contracted with Wood Brothers Homes, a corpora-

tion, to sell fifty-seven finished lots (not involved in this appeal). As additional consideration, Security agreed to grant Wood Brothers an option to buy any of the twenty-six lots Hopp Realty and Sheehan Realty did not sell during the 180 day listing agreement. Wood Brothers' option was limited by the following language:

SUBJECT, HOWEVER, TO THE EXISTING PRIOR RIGHT OF R.P. HOPP REALTY AND SHEEHAN REALTY TO SELL SUCH LOTS TO THIRD PARTIES PURSUANT TO THEIR BROKERAGE AGREEMENT WITH SELLER [SECURITY], which may result in fewer than 26 additional finished lots being available for this option;

The option to Wood Brothers was to be for thirty days, with the following agreement regarding notice:

Seller [Security] shall notify Buyer [Wood Brothers] on or before June 15, 1980, of the number and designation of the 26, or such lesser number as herein provided, lots described above which have not been sold by R.P. HOPP REALTY and SHEEHAN REALTY and which are then subject to this option, *the giving of such notice,* as herein provided, *shall commence the 30-day term of this option.* [Emphasis supplied.]

After the exclusive listing expired, Wood Brothers exercised its option with Security. Talley, Daugherty, Hopp Realty, and Sheehan Realty (Brokers) sued Security for the commission they would have earned pursuant to their contract had they sold the twenty-six lots.

Brokers rely on the language of the listing agreement, which provides in part as follows:

I [Security] agree to pay Broker a commission of _____ per cent of the selling price plus applicable New Mexico Gross Receipts Tax on said commission upon the occurrence of any of the following events:

(1) If prior to the termination of this agreement Broker or his agent secures a purchaser on the above terms or at any other price or terms acceptable to me; or

(2) If prior to the termination of this agreement the said property is sold or exchanged by Broker or his agent or any other person, including myself; or

(3) If at any time up to three months following the termination of this agreement the said property is sold or exchanged to any person who has inspected or been shown the property, and whose name Broker or his agent had, prior to termination, submitted to me in writing or personally introduced to me as a prospective purchaser and if the said property had not been relisted prior to the sale or exchange; or

(4) If by any action I prevent performance of this agreement by Broker or his agent.

The parties concede that paragraphs (1) and (3) do not apply. Brokers contend, however, that since Wood Brothers exercised their option to purchase the twenty-six lots, Brokers are entitled to a ten percent commission pursuant to paragraph (2) of the listing agreement. They claim this even though the option period did not commence until June 16, 1980 (after the listing agreement had terminated), and the option was not exercised by Wood Brothers until June 20, 1980. Their reasoning is that the sale to Wood Brothers related back to December 28, 1979, when Security agreed to grant Wood Brothers an option to buy the twenty-six lots after the 180 day listing agreement terminated. Additionally, Brokers contend that the agreement to grant the option prevented them from performing under the listing agreement and that they therefore are entitled to their commission pursuant to paragraph (4).

1. Did the Sale Relate Back?

■ It is a settled principle that when an owner sells the property covered by an exclusive listing agreement during the term of the agreement, the broker is entitled to the commission. *White v. Ragle,* 82 N.M. 644, 485 P.2d 978 (Ct.App.1971). The owner-broker relationship exists during the term of the listing agreement. During that term "the contractual duties of the owner

are to compensate the broker for services rendered in accordance with the contract of employment and to exercise good faith toward the broker * * *." *Wilson v. Hayner,* 98 N.M. 514, 516, 650 P.2d 36, 38 (Ct.App. 1982).

To support their claim for a commission, Brokers rely primarily on the case of *Anthony v. Enzler,* 61 Cal.App.3d 872, 132 Cal. Rptr. 553 (1976), for the proposition that when an owner grants an option during the term of the listing agreement and the option is exercised after the listing agreement terminates, the sale relates back to the date the option was granted. In *Anthony,* third party purchasers obtained by the broker attempted to defeat the broker's right to a commission by inducing the owner to enter into an option agreement that would not be exercised until the listing agreement had terminated. The California court of appeal found that the owner conspired with the third party buyer in order to injure the broker. This conspiracy was intended to benefit the buyer because the owner would be saved the cost of broker commission and could therefore lower the price of the land. The court found in favor of the broker and ordered the owner and the buyer to pay the commission. The court also awarded punitive damages against the buyer for interfering with broker's contractual relationship.

■ *Anthony* comports with *Wilson v. Hayner, supra,* in that the owner has a duty to exercise good faith toward the broker and to compensate him for services rendered in accordance with the listing agreement. *See also Execu-Systems, Inc. v. Corlis,* 95 N.M. 145, 619 P.2d 821 (1980). The principles enunciated in *Anthony* with respect to the relation back of the sale in that case are inapposite to the present case, however. The trial court in this case found, in effect, that Security acted in good faith toward Brokers, and that finding is supported by the evidence. Security's agreement to grant Wood Brothers an option commenced after the listing agreement terminated. Moreover, the option was subject to Brokers' right to sell the twenty-six lots

during the term of the listing agreement. Had Brokers sold the lots there would not have been an option to exercise, since the Security-Wood Brothers agreement specifically provided protection for Brokers' right to sell the lots in accordance with the listing agreement. The trial court found that Brokers were made aware of the existence of the agreement with Wood Brothers during the 180 day term of the listing agreement. This finding is also supported by substantial evidence and will be upheld. *See Toltec International, Inc. v. Village of Ruidoso,* 95 N.M. 82, 619 P.2d 186 (1980).

■ Brokers urge us to apply the doctrine of relation back to the facts of this case. This we refuse to do because (1) Security did not sell the property during the term of the listing agreement; (2) Wood Brothers initiated the negotiations for a future option; (3) Brokers did not find the buyer; and (4) Security did nothing adverse to Brokers' rights under the listing agreement. *Cf. White v. Ragle, supra* (when broker had partially performed under contract, owner's attempted revocation of the agreement prior to expiration of its terms was ineffective).

2. Did Security Prevent Broker From Performing Under the Listing Agreement?

Brokers contend that Security prevented them from performing under the listing agreement by setting the prices on the lots excessively high in relation to comparable lots on the market. Brokers also argue that by agreeing to grant Wood Brothers an option to buy any lots remaining unsold at the termination of the listing agreement, Security prevented Brokers' performance.

■ The trial court found that Talley and Daugherty were made aware of the selling price of the lots prior to entering into the agreement and that they did not object to the price assigned to the lots. It should also be noted that Talley and Daugherty agreed that Security should determine the minimum sale price of the lots. Brokers cannot now complain about something

they agreed to. Moreover, the evidence was conflicting as to whether the prices set by Security were too high in comparison with prices of similar lots. The trial court's finding was supported by the evidence and will not be disturbed. *See Worthey v. Sedillo Title Guaranty, Inc.,* 85 N.M. 339, 512 P.2d 667 (1973).

"Prevent" has been defined as "[k]eep from happening, hinder, frustrate." *City of Clovis v. Archie,* 60 N.M. 239, 241, 290 P.2d 1075, 1076 (1955); *see also Wilson v. Hayner, supra.* We already have held that Security acted in good faith toward Brokers. Furthermore, Brokers could have continued in their efforts to locate a buyer for the lots. They were not unalterably bound by the prices assigned to the lots since the listing agreement afforded them the right to secure a purchaser "at any other price or terms acceptable to" Security. They could have approached Wood Brothers since they learned of the Security-Wood Brothers agreement during the term of the listing agreement. Instead, they chose to rely on the tenuous proposition that any sale to Wood Brothers, if the latter decided to exercise the option, would inure to their benefit. They filed their action for commission the day after the listing agreement terminated and before the option to Wood Brothers commenced or was exercised. The trial court found that Security did not prevent Brokers from performing under the agreement. This finding also is supported by substantial evidence and will not be set aside. *See Toltec International, Inc. v. Village of Ruidoso, supra.*

3. Waiver of Commission and Application of Equitable Principles.

Brokers assign as error the trial court's conclusion of law that they waived their right to a commission by failing to submit to Security in writing the name of any prospective buyer prior to the termination of the listing agreement. Brokers also argue that the court erred in refusing to conclude that it would be inequitable to allow Security to circumvent the listing agreement by the device of granting an option.

■ As Brokers note, a waiver "is the voluntary relinquishment or surrender of some known right. Its constituent elements are an existing right; knowledge of such right; and an intention to relinquish or surrender it." *Yates v. American Republics Corp.,* 163 F.2d 178, 179 (10th Cir. 1947); *see also Cooper v. Albuquerque City Commission,* 85 N.M. 786, 518 P.2d 275 (1974). The trial court found that Brokers failed to make diligent efforts to sell the lots covered by the listing agreement and concluded that Brokers had therefore waived their right to a commission. However, because we hold that no commission was earned under the facts of this case, it is unnecessary for us to address the claimed error in the court's conclusion of law finding waiver.

■ Finally, Brokers suggest that it would be inequitable to deprive them of a commission since the listing agreement was part of the consideration Talley and Daugherty received for the sale of their seventeen acres to Security. Brokers also argue that Security's grant of a future option to Wood Brothers was an artifice used to circumvent Security's obligation to Brokers. We find, however, that Security complied by granting the listing agreement to Brokers. At that point the relationship changed. Security owed Brokers good faith dealing, and Brokers assumed a fiduciary relation to Security. *Iriart v. Johnson,* 75 N.M. 745, 411 P.2d 226 (1965); *Canfield v. With,* 35 N.M. 420, 299 P. 351 (1931); *Amato v. Rathbun Realty, Inc.,* 98 N.M. 231, 647 P.2d 433 (Ct. App.1982). Their respective rights and responsibilities flow from the listing agreement. Brokers did not procure a buyer; the sale was not made during the term of the listing agreement; Security did nothing to prevent Brokers from performing under the listing agreement; and there was no fraud or bad faith dealing on the part of Security. For these reasons, equity will not intervene. *See Newman v. Basin Motor Co.,* 98 N.M. 39, 644 P.2d 553 (Ct.App.1982); *Ross v. Ringsby,* 94 N.M. 614, 614 P.2d 26 (Ct.App.1980); *Ortiz v. Lane,* 92 N.M. 513, 590 P.2d 1168 (Ct.App.1979).

We find no error. The judgment of the trial court is therefore affirmed.

IT IS SO ORDERED.

PAYNE, C.J., and RIORDAN, J., concur.