698 P.2d 1

**M.L. CLODFELTER, d/b/a New Mexico Real Estate Investments, Plaintiff-Appellee,**

v.

**PLAZA LIMITED, et al., Defendants-Appellants.**

No. 15119.

Supreme Court of New Mexico.

April 8, 1985.

Sutin, Thayer & Browne, Saul Cohen, Santa Fe, for defendants-appellants.

Yost, Barberousse, Yost & Silver, Bob Barberousse, Santa Fe, for plaintiff-appellee.

**OPINION**

SOSA, Senior Justice.

This cause of action is brought by plaintiff Clodfelter, a real estate broker, against defendant partnership, Plaza Limited (Owners), to recover the commission due on the sale of certain property in Taos. The trial court awarded Clodfelter the agreed upon commission on the property sale. We affirm the trial court.

The determinative question to be answered is whether, in an agreement between a broker and a property owner, either an "exclusive right to sell" or an "exclusive agency" clause restricts the right of a property owner to engage the services of another broker.

Clodfelter and all of the partner-Owners signed a letter of agreement on September 5, 1979. The agreement contained an "exclusive right to sell" provision and another provision allowing a sale to be made by the Owners. A second agreement, a printed form from the Multiple Listing Service (MLS) entitled "Exclusive Right to Sell," was signed September 26, 1979 by Clodfelter and one of the general partners. Clodfelter prepared brochures, advertised widely and showed the property.

In May or June 1980, the Owners signed a real estate agreement for the property with a new broker, Muchmore. The sale of the property was arranged and a "contract for sale" was entered on August 11, 1980, between the Owners and a buyer Muchmore obtained. On August 27, 1980 the Owners requested and obtained a letter from Clodfelter in which he agreed he was not entitled to a commission if the property was "sold solely through the efforts of the owners." The Muchmore sale closed September 4, 1980 and Muchmore received a 6% commission. There is testimony disclosing that Clodfelter was never told by any of the partner-Owners that their agreement

was terminated or that a new broker had been engaged to sell the property.

The following issues are raised by the Owners: (1) Whether the September 5, 1979 agreement was enforceable; (2) If the September 5 agreement is found to be enforceable, whether or not it binds the Owners; (3) Whether the letter of August 27, 1980 released the Owners from paying a commission; (4) whether Clodfelter sufficiently performed under the agreement to make it binding on the Owners; and (5) whether the MLS printed form is binding when only one partner signed it.

In answering issues one through four, we need not reach whether the Owners are bound by the second, more restrictive, MLS contract which includes both "exclusive right to sell" and "exclusive agency" clauses.

The trial court found that on September 5, 1979 all parties entered into an agreement giving the broker the right to sell the Owners' property. This agreement included a 6% commission plus New Mexico gross receipts tax, and an "exclusive right to sell" provision, which the trial court concluded was valid and binding upon the parties. It contained no termination date and was to:

> remain valid until such time as the property is sold, taken off the market or by reason that our firm has not performed the necessary functions to market the property.

Additionally, the agreement stated in the last paragraph:

> If you are in agreement with the foregoing, then this letter shall serve as an agreement with this firm. Your signature below will affirm said agreement.

The agreement included a handwritten provision, "This agreement is exclusive of any sale made by owners of their property." The agreement was signed by Clodfelter, as the broker, and by all five of the partners-Owners.

Clodfelter claims he had an "exclusive right to sell" contract which precluded the Owners from selling the property through another broker. The Owners claim that the provisions for a sale by the Owners in both the September 5, 1979 agreement and the later letter of August 27, 1980, allowed them to contract with other brokers to sell the property.

The issue to be decided is whether, under the terms of the September 5, 1979 agreement, the owners could engage the services of another broker to sell their property while the contract with the first broker was still in effect. To decide this, the effect of the handwritten provision of September 5, excluding the owners from the "exclusive right to sell" provision must be determined.

There are two types of exclusive agreements commonly used in real estate contracts, the *"exclusive agency"* agreement and the *"exclusive right to sell"* agreement. *Carlsen v. Zane*, 261 Cal.App.2d 399, 67 Cal.Rptr. 747 (1968); *see also* Annot., 88 A.L.R.2d 936 (1963) (distinguishing "exclusive agency" and "exclusive right to sell" clauses and explaining their restrictions on the owner's right to sell.)

■ The "exclusive agency" agreement prohibits an owner from selling the property *through another broker* during the listing period, but *allows the owner to sell his property through his own efforts.* *White v. Ragle*, 82 N.M. 644, 485 P.2d 978 (Ct. App.1971); *Carlsen v. Zane.*

■ In comparison, the "exclusive right to sell" provision is more restrictive in that by contract it *precludes the sale of the property by anyone, including the owner*, thus, protecting the broker from *any* sale other than one he arranges. *Talley v. Security Service Corp.*, 99 N.M. 702, 663 P.2d 361 (1983). *White v. Ragle; Carlsen v. Zane. See also* Annot., 88 A.L.R.2d 936 (1963).

■ In the instant case, the parties agreed to an "exclusive right to sell" provision in the contract, but by modifying the agreement to allow the Owners to sell their property, they created an "exclusive agency" contract. *See White v. Ragle; Carlsen v. Zane.* Virtually all jurisdictions agree

with New Mexico in recognizing that an "exclusive agency" provision:

> does not preclude the owner from selling the property *himself without the aid of any broker* ... [but it] *precludes the owner from selling through the agency of another broker.*

Annot., 88 A.L.R.2d 936 at 947 (1963) (emphasis added). *See White v. Ragle, Carlsen v. Zane; MacKnight v. Pansey,* 122 R.I. 774, 412 A.2d 236 (1980); *Foltz v. Begnoche,* 222 Kan. 383, 565 P.2d 592 (1977).

■ Here the owners sold their property through the agency of another broker. That action constituted a breach of contract between the first broker, Clodfelter, and the Owners.

■ There is no evidence in the record showing any attempt on the part of the Owners to revoke the contract with Clodfelter *prior* to the August 27, 1980 letter allowing the Owners to sell their property. That letter provided that if the property was "sold solely through the efforts of the owners with no intervention by [Clodfelter]," a commission would not be paid to him. We interpret "solely" in this letter to mean the Owners themselves arrange for the sale. This would not include a sale that is the result of the efforts of another broker. *See White v. Ragle; Carlsen v. Zane.* Therefore, the August 27, 1980 letter has the same result as the September 5, 1979 agreement, the creation of an "exclusive agency" between Clodfelter and the Owners. Furthermore, because the August 27, 1980 letter with Clodfelter was signed (1) *after* the broker's agreement between the Owners and the second broker, Muchmore, and (2) *after* the contract for sale arranged by Muchmore; it had no effect on the "exclusive agency" provision of the September 5, 1979 agreement. *See White v. Ragle.*

■ The Owners allege that Clodfelter did not perform under the contract and thus, it was revocable at the time of the contract for sale arranged by Muchmore. We have previously held that an exclusive listing may be revoked at will until there is partial performance by the broker. *White v. Ragle.* There is evidence in the record showing that the broker prepared brochures and provided wide-spread advertising which resulted in inquiries and property viewings for prospective buyers. This evidence was sufficient for the trial court to find that the broker, pursuant to the agreement, had expended his time and effort to sell the property, therefore completing partial performance. *See Toltec International, Inc. v. Village of Ruidoso,* 95 N.M. 82, 619 P.2d 186 (1980). Whether or not there has been partial performance under the contract is a question of fact to be determined by the trial court. *Marchiondo v. Scheck,* 78 N.M. 440, 432 P.2d 405 (1967). It is ineffective for an owner to attempt to revoke a contract prior to its expiration if the broker has partially performed. *Talley v. Security Service Corp.* The trial court's finding of sufficient performance on the part of Clodfelter to enforce the contract was proper.

■ This court has stated, "the owner has a duty to exercise *good faith* toward the broker and to compensate him for services rendered in accordance with the listing agreement." *Talley v. Security Service Corp.,* 99 N.M. at 705, 663 P.2d at 364 (emphasis added); *see also Wilson v. Hayner,* 98 N.M. 514, 650 P.2d 36 (Ct.App. 1982). There is evidence in the record that during the term of the "exclusive agency" agreement with Clodfelter, the Owners contracted with a second broker, Muchmore, to sell the property and that the Owners agreed to a "contract for sale" with a buyer provided by Muchmore. There is testimony that at the time of the sale of the property by Muchmore, Clodfelter had obtained a ready and willing buyer. Consequently, the Owners not only breached their agreement with Clodfelter by entering into an agreement to sell through another broker, they also breached their contractual "good faith" duty to Clodfelter by frustrating his sale of the property and preventing him from pursuing his duties

under the contract. *See Talley v. Security Service Corp.*

In an action for breach of an exclusive agreement between a broker and a property owner, New Mexico and other jurisdictions have held that the first broker is entitled to his full commission. *White v. Ragle; see also Talley v. Security Service Corp.; Beasley-Kelso Assoc., Inc. v. Tenney,* 30 N.C.App. 708, 228 S.E.2d 620, *cert. denied,* 291 N.C. 323, 230 S.E.2d 675 (1976); *Brown v. Teel,* 108 N.H. 365, 236 A.2d 699 (1967); *Messick v. Powell,* 314 Ky. 805, 236 S.W.2d 897 (Ct.App.1951). If an owner breaches an exclusive agreement by negotiating a sale through another broker, rendering performance by the first broker impossible, the first broker may recover his commission without showing that he could have performed by tendering a satisfactory buyer or that he was the procuring cause of the sale. *Carlsen v. Zane; see also Kuykendall Real Estate Co. v. United States,* 401 F.2d 806, 185 Ct.Cl. 585 (1968) (showing a reasonable effort to effect a sale is sufficient to recover the commission as damages).

Clodfelter, as a broker under an "exclusive agency" agreement that was breached, is entitled to his full commission of $50,100.00 plus New Mexico gross receipts tax in the amount of $2,004.00.

The trial court is affirmed.

FEDERICI, C.J., and RIORDAN, J., concur.