793 P.2d 178

**W.O. KEPLER, d/b/a Kepler Realty, Plaintiff/Appellant/Cross Respondent,**

v.

**Neal ARAVE and Karen Arave, husband and wife, Defendants/Respondents/Cross Appellants.**

No. 17720.

Supreme Court of Idaho.

March 23, 1990.

As Modified on Denial of Rehearing June 20, 1990.

Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for plaintiff/appellant/cross respondent. C. Timothy Hopkins, argued.

Swafford & Ward, Idaho Falls, for defendants/respondents/cross appellants. Ronald S. Swafford, argued.

BISTLINE, Justice.

I.

The plaintiff, W.O. Kepler, a licensed real estate broker, brought suit to recover a commission on a property exclusively listed with him by the owners, Neal and Karen Arave. After the taking of depositions both parties moved for summary judgment, following which the court awarded summary judgment to the Araves. From that adverse decision Kepler appealed.

· The contract listing the Araves' farm with Kepler was signed by Kepler and Neal Arave on October 22, 1985. The contract specified a selling price of $450,000.00 and a commission of 6 percent. The contract stated that the listing was to expire at midnight of October 22, 1986. The part of the contract concerning the nature of the listing consisted of an instruction and two alternative clauses:

* Note: strike out unwanted clause:

THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, exchange or conveyance, of said property, or any part thereof, during the term of your employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you.

THIS LISTING IS A NON-EXCLUSIVE LISTING. Any sale, exchange, or conveyance of the property, or any part thereof by me prior to the said expiration date or through another broker or third person without your assistance shall be construed as a withdrawal of your authority to sell the above described property.

The heading of the second alternative clause was obliterated.

During the spring of 1986, Neal Arave, with the assistance of his brother, Dale Arave, a Bingham County Commissioner, who was also licensed as a real estate broker, negotiated with Dr. John Liljenquist of Idaho Falls for the sale of part of the property. In that process a survey of the property was obtained from Harper–Leavitt Engineering, Inc. Also obtained was a survey map and a metes-and-bounds description of the property, both of which were complete and accurate as legal descriptions of definite parcels of real estate. The survey map divided the property into three parcels numbered 1, 2, and 3, and a separate metes-and-bounds description was prepared by the engineers for Parcel 1 which contained 37.09 acres. A sale to Dr. Liljenquist was never concluded.

Over the listing period, Kepler expended considerable time, effort and money in attempting to find a buyer for the property. He talked to a number of people about the property and did research on other possible buyers. He showed the property to V.F. Klinetobe of Boise, Ron Elsworth of Denver, Kevin Fleenor of Idaho Falls, Porter Hogan of Springfield, Idaho, and a party from Minnesota. At his own expense he ran advertisements which included photographs of the property in local newspapers and real estate magazines. He answered telephone inquiries about the property. He assisted in the Liljenquist negotiations which resulted in the latter submitting an offer. He prevailed in causing other realtors to show the property.

Early in September 1986, one Steve Peterson of Firth, Idaho, inquired of Kepler as to the availability of the Arave property and the asking terms. After receiving that information from Kepler's office, Peterson took Dr. Jay Horowitz to the property where he introduced the doctor to Neal Arave. Horowitz noticed Kepler's sign by the road and asked whether Kepler had the property listed. Arave, in what appears to have been a patent misrepresentation, replied to Horowitz that Kepler's listing had expired.

Subsequently Horowitz and Arave entered into negotiations concerning the purchase of the part of the property known as Parcel 1. Kepler asked Arave if he wanted Kepler's assistance with the negotiations, and Arave declined, stating that he had assistance from his brother. On September 24, 1986, the Araves' entered into a purchase and sale agreement with Jay and Susan Horowitz for the property described as follows:

S. 4, T.1N., R. 38 E.B.M., Bonneville County, State of Idaho, commonly known as Neal Arave ranch, legally described as See attached legal description, parcel 1, 37.09 acres.

There is some dispute as to whether a copy of the survey map was attached to the agreement, but the original of the map was available to and discussed by the parties at the time the agreement was made. The agreement also specified a purchase price of $285,500 and the assignment of an undivided interest in an apartment complex called the Peppertree Apartments in Lubbock, Texas. The agreement was accompanied by $5000 earnest money in the form of Horowitz' personal check made out to Neal Arave, which, together with the Horowitz' original $1000 earnest money deposit, comprised the required $6000 deposit. The parties agreed that the Horowitz' offer would be available for acceptance by the Araves' on or before midnight on September 24, 1986, and that closing on the sale would occur on or before November 1, 1986. The broker listed on the agreement was Dale Arave, who later received a motor home, title to which had been transferred to the Araves by the Horowitz' as part of the consideration for purchase of the property.

In furtherance of the acquisition of title insurance, some further survey work was done. Parcel 1 was divided into to two sub-parcels for this purpose. The final deed transfer excepted one-half an acre which belonged to a neighboring ranch and noted that one part of the property was encumbered by a road easement. The final transaction was concluded on October 30, 1986. Kepler never received any compensation.

This fact situation narrows down to two issues:

1. Did the contract between Kepler and the Araves constitute an exclusive listing?

2. Is Kepler entitled to a commission for the sale of the property?

## II.

■ The district court's opinion on entering the summary judgment stated:

[I]t is very likely that the jury would find the listing to be nonexclusive. The directions on the form states that the unwanted clause should be struck out. A heading was struck but the clause was not struck. It would be difficult to find there was an intention to strike a clause when the clause was not struck. And it would not just be the intention of the broker; it would have to be the joint intention.

We disagree. These clauses are clearly contradictory: The first clause provides for the payment of the commission regardless of who sells the property; the second clause stipulates that the sale of the property by the owner or a third person terminates the broker's relationship with the property, thus denying him a commission. "While provisions of a contract are to be read together and harmonized whenever possible, ... if two clauses relating to the same thing are so repugnant that they cannot stand together, the first will be received and the later one rejected...." *Morgan v. Firestone Tire & Rubber Co.*, 68 Idaho 506, 518, 201 P.2d 976, 983 (1948). In the instant case, the text of the non-exclusive clause is the later provision, the heading of the non-exclusive provision is stricken in response to the instruction to "strike unwanted clause," and the evidence clearly indicates that the parties treated this as an exclusive listing until Dr. Horowitz appeared on the scene. Even bearing in mind the rule that ambiguous contract terms are to be construed against the person who used them, *Luzar v. Western Sur. Co.*, 107 Idaho 693, 692 P.2d 337 (1984), these facts defeat any argument that Kepler's failure to cross out the entire clause rather than just the heading implies that

the parties intended the listing to be non-exclusive. The trial court erred in not ruling that the listing was exclusive.

## III.

■ The evidence supporting Kepler's claim to a commission is equally conclusive. The trial court focused on determining whether the earnest money agreement between the Araves and the Horowitz' was sufficiently definite to constitute a binding sale. Citing *Blumauer–Frank Drug Co. v. Young*, 30 Idaho 501, 167 P. 21 (1917), and *Hoffman v. S V Co.*, 102 Idaho 187, 628 P.2d 218 (1981), the court ruled in favor of the Araves on the grounds that the property description in the earnest money agreement was not sufficient to constitute an enforceable contract, and therefore did not rise to the level of a consummated sale.

This focus was misplaced. There may exist other contractual provisions in addition to consummating a sale which require payment of a commission. *See Clarke v. Blackfoot Water Works, Ltd.*, 39 Idaho 304, 228 P.2d 326 (1924) where it was provided in a contract for the sale of property by a real estate broker that the owner would pay an agreed commission in the event of a sale of the property, within twelve months after the expiration of the contract, to "any individual, firm or corporation with whom or with which (the broker) shall have been in correspondence, or shall have opened negotiations, during the twelve (12) months....," it was not necessary that the property be sold as the result of the efforts of the broker, it being necessary only for the broker to show that the property was finally sold to one with whom or with which he had been in correspondence, or had opened negotiations, within the time provided); Annotation, *Broker's Right to Commission on Sales Consummated After Termination of Employment*, 27 A.L.R. 2d 1348 (1953).

The listing contract between the parties states: "This agreement expires at midnight on 10–22, 1986, but I further allow you a reasonable time thereafter to close any deal on which earnest money is then deposited." There is no disputing that ear-

nest money was indeed deposited prior to the expiration of the listing. There is no disputing that the sale to the Horowitzes was wholly concluded no more than two weeks after October 22, 1986. As noted, the mutual exclusive listing clause itself makes wholly irrelevant the question of who procured the buyer or concluded the sale for purposes of creating the Araves' liability for the commission. *Clodfelter v. Plaza Ltd.*, 102 N.M. 544, 698 P.2d 1 (1985) notes that the owner has a duty to exercise *good faith* toward the broker and to compensate him for services rendered in accordance with the listing agreement. *See also* Annotation, *"Exclusive Right to Sell" and Other Terms in Real–Estate Broker's Contract as Excluding Owner's Right of Sale*, 88 A.L.R.2d 936 (1963). The only question which remained for resolution by the trial court was to determine whether the closing took place within "a reasonable time" after the expiration of the listing. Kepler contends that closing took place on October 24, when the warranty deed was delivered to Dr. and Mrs. Horowitz. The Araves contend that the final agreement was entered into on October 30. In either event, we conclude that a closing within eight days of the expiration of a one-year listing is by definition reasonable.[1] "Where only one conclusion can reasonably be drawn from the evidence, a question of fact may be decided by an appellate court." *Myers v. A.O. Smith Harvestore Prods., Inc.*, 114 Idaho 432, 757 P.2d 695 (Ct.App. 1988). Resolution of the reasonableness issue leaves no genuine issue as to any material fact. We rule that on this record Kepler is entitled as a matter of law to a summary judgment in his favor. I.R.C.P. 56(c); *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982).

Resolution of the reasonableness issue nevertheless leaves unresolved certain issues of fact concerning the affirmative defenses raised by the Araves and concerning the amount of commission which may be owed to Kepler if those defenses are decided in his favor. The cause is therefore remanded to the district court with instructions to vacate the summary judgment which was entered in favor of the Araves and to conduct further proceedings in accordance with this opinion. Costs to Kepler, with no attorney fees on appeal.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ. concur.

---

1. Our holding makes it unnecessary to consider Kepler's alternative theory that the Araves were guilty of fraud and deception, particularly in reference to purposefully delaying the Horowitz sale until after the one year exclusive listing expired at midnight on October 22, 1986.